David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENNA DICKERSON, Individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>-against-<br><br>ANDY MACMILLAN, DARRELL BENATAR, ANDREW BRACCIA, TATYANA MAMUT, SHANNON NASH, CYNTHIA RUSSO, ALEXANDER WONG, JON PEXTON, and USERTESTING, INC.,<br><br>Defendants. | Civil Action No. 3:23-cv-1320<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL<br><br>VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934 |

Plaintiff Brenna Dickerson ("Plaintiff"), by her undersigned attorneys, alleges upon personal knowledge with respect to herself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against UserTesting, Inc. ("UserTesting" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the acquisition (the "Acquisition") of UserTesting by affiliates of Thoma Bravo, L.P. ("Thoma Bravo") and Sunstone Partners Management, LLC ("Sunstone Partners"). Plaintiff

also asserts a claim against Defendant Jon Pexton, UserTesting's Chief Financial Officer, under Section 20(a) of the Exchange Act as a control person of UserTesting for facilitating the misconduct of the Director Defendants and UserTesting.

2. On October 26, 2022, UserTesting entered into an Agreement and Plan of Merger (the "Acquisition Agreement"), pursuant to which Company shareholders would receive $7.50 for each share of common stock they owned (the "Acquisition Consideration").

3. On December 6, 2022, to convince UserTesting shareholders to vote in favor of the Acquisition, Defendants authorized the filing of a materially incomplete and misleading Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. Specifically, the Proxy contained the following materially false and/or misleading statements (the "Proxy Misrepresentations"):

   i) that the Board "belie[ved] that the $7.50 per share in cash payable in the [Acquisition] was more favorable to [UserTesting] stockholders on a risk-adjusted basis than the potential value that might result from other alternatives reasonably available[.];

   ii) the present value per share of UserTesting common stock calculated by Morgan Stanley & Co. LLC ("Morgan Stanley"), UserTesting's financial advisor, using the unreasonably low October Financial Forecast under a Public Trading Comparables Analysis, namely "an estimated value per share of UserTesting common stock of $3.80 to $6.46";

   iii) the present value per share of UserTesting common stock calculated by Morgan Stanley using the unreasonably low October Financial Forecast under a Discounted Equity Value Analysis, namely "$4.08 – 7.51";

   iv) the present value per share of UserTesting common stock calculated by Morgan Stanley using the unreasonably low October Financial Forecast under a Precedent Transactions Multiples Analysis, namely "$6.92 – 10.77"; and

      v)      the present value per share of UserTesting common stock calculated by Morgan Stanley using the unreasonably low October Financial Forecast under a Discounted Cash Flow Analysis, namely "$3.59 to $5.17".

5. On January 10, 2023, UserTesting held a special meeting of its shareholders (the "Shareholder Vote") in connection with the Acquisition. In reliance on the Proxy Misrepresentations, UserTesting's misled shareholders voted to support the Acquisition.

6. For these reasons, and as detailed herein, Plaintiff asserts claims against the Defendants under Sections 14(a) and 20(a) of the Exchange Act to recover the damages caused by their violations.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) UserTesting maintained its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10. Plaintiff is, and at all relevant times has been, a holder of UserTesting common stock.

11. UserTesting is a Delaware corporation with principal executive offices located in San Francisco. It traded its common stock under the ticker symbol "USER".

12. Individual Defendant Andy Macmillan was, and was at all relevant times, UserTesting's Board Chair. In addition, he was and continues to be UserTesting's Chief Executive Officer.

13. Individual Defendant Darrell Benatar is, and has been at all relevant times, a director of UserTesting. He was also one of the co-founders of the Company.

14. Individual Defendant Andrew Braccia was at all relevant times a director of UserTesting.

15. Individual Defendant Tatyana Mamut was at all relevant times a director of UserTesting.

16. Individual Defendant Shannon Nash was at all relevant times a director of UserTesting.

17. Individual Defendant Cynthia Russo was at all relevant times a director of UserTesting.

18. Individual Defendant Alexander Wong was at all relevant times a director of UserTesting.

19. Individual Defendant Jon Pexton is, at all relevant times was, the Chief Financial Officer of UserTesting.

20. The Individual Defendants referred to in ¶¶ 12-18 are collectively referred to herein as the "Director Defendants" or the "Board".

# SUBSTANTIVE ALLEGATIONS

## I. Company Background

21. UserTesting owns what it calls a "human insight platform" that allows its customers to gather feedback on the usability of websites, apps, and physical products by interviewing test consumers via two-way video chat. UserTesting also provides the test consumers, which customers of the platform can select for testing based on a number of filters.



Picture of interaction with consumer during UserTesting session
(source: https://www.usertesting.com/platform)

22. The Company is considered a software-as-a-service (or "SaaS") business. It generates its revenue by selling subscriptions to its platform and charging customers for related professional services, such as research studies, training services, and strategy workshops. Subscriptions typically cover a one-year service period, with different capability tiers offered at different price points.

23. Customers are generally invoiced for the full cost of a subscription at the start of a

contract period (i.e., annually in advance), with charges for any usage over the contracted service level invoiced on a quarterly basis. Subscription revenue is recognized on a straight-line basis beginning on the date access to the Company's platform is granted. Professional services revenue are recognized as labor hours are incurred.[1]

24. Total revenues were $76.63 million for 2019, $102.20 million for 2020, $147.82 million for 2021, and $142.82 million for the nine months ended September 31, 2022, the last time period with publicly reported financial information.

25. UserTesting's customer count was 1,370 in 2019, 1,710 in 2020, 2,350 in 2021, and 2,580 for the nine months ended September 31, 2021.

26. The Company is headquartered in San Francisco, with further offices in Sunnyvale, Atlanta, Oslo (Norway), and Edinburgh (Scotland). It was taken public in November 2021 at an implied equity value of approximately $2 billion. As of September 30, 2022, the Company had 810 employees in total.

**II. The Flawed Sales Process.**

27. On August 30, 2022, the Board held a meeting at which Defendant Pexton, Mona Sabet ("Sabet"),[2] legal advisors, and representatives of Morgan Stanley were present. At the meeting, representatives of Morgan Stanley and the Board discussed a potential acquisition by Thoma Bravo and determined to retain Morgan Stanley as financial advisor in connection with a potential transaction with Thoma Bravo because of, inter alia, Morgan Stanley's familiarity with the Company's business and prior experience negotiating numerous transactions with Thoma Bravo.

28. On September 1, 2022, UserTesting finalized a long term financial plan for 2023-2025, identified in the Proxy as the September Financial Forecast.

29. On September 8, 2022, Thoma Bravo submitted a non-binding indication of interest to acquire all outstanding shares of UserTesting for $9.50 per share in an all-cash transaction (the "September 8 Proposal").

30. On September 10, 2022, the Board held a meeting at which Defendant Pexton, Sabet,

---

[1] UserTesting reported its subscription and professional services revenue under separate revenue segments.
[2] Mona Sabet has been UserTesting's Chief Strategy Officer since May 2019.

legal advisors, and representatives of Morgan Stanley were present. At the meeting, representatives of Morgan Stanley reviewed certain financial aspects of the September 8 Proposal and provided an overview of the Company's financial and stock performance since its initial public offering and Morgan Stanley's views on the current market environment.

31. On September 14, 2022, Thoma Bravo submitted a revised non-binding indication of interest to acquire all outstanding shares of UserTesting for $10.00 per share (the "September 14 Proposal").

32. On September 16, 2022, the Board held a meeting at which Pexton, Sabet, legal advisors, and Morgan Stanley were present. At the meeting, representatives of Morgan Stanley reviewed with the Board certain financial aspects of the September 14 Proposal and provided an update with respect to the discussions that Morgan Stanley had with Thoma Bravo.

33. On October 4, 2022, after previously stating that it was not willing to proceed with negotiations, Thoma Bravo contacted representatives of Morgan Stanley and indicted that Thoma Bravo was prepared to resume discussions at a price of $7.50 per share (the "October 4 Proposal"). Following that call, the Board held a meeting at which Pexton, Sabet, legal advisors, and representatives of Morgan Stanley were present.

34. On October 23, 2022, the Board held a meeting at which Pexton, Sabet, legal advisors, and representatives of Morgan Stanley were present. At the meeting, Defendant MacMillan and representatives of Morgan Stanley reviewed the October 20 Proposal and the status of the Proposed Transaction, including that Thoma Bravo had confirmed the price included in the October 20 Proposal. Pexton then presented the updated long-term financial forecast that was developed by management over the course of October, identified in the Proxy as the October Financial Forecast.

35. On October 26, 2022, the Board held a meeting at which Pexton, Sabet, legal advisors, and representatives of Morgan Stanley were present. Representatives of Morgan Stanley delivered to the Board its oral opinion, which was subsequently confirmed by delivery of a written opinion dated October 26, 2022, to the effect that the Merger Agreement was fair from a financial point of view to the holders of UserTesting's common stock.

36. On October 27, 2022, the Company issued a press release announcing the Acquisition:

**UserTesting to be Acquired by Thoma Bravo and Sunstone Partners for $1.3Bn**

SAN FRANCISCO—BUSINESS WIRE—UserTesting, Inc. (NYSE: USER), a leader in video-based human insight, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, and Sunstone Partners for $7.50 per share, in an all-cash transaction valued at approximately $1.3 billion. The offer represents a premium of approximately 94% over UserTesting's closing stock price on October 26, 2022 and a premium of approximately 97% over the volume weighted average price (VWAP) of UserTesting's shares for the 30 trading days ended October 26, 2022.

Following the closing of the transaction, Thoma Bravo and Sunstone Partners intend to combine UserTesting and UserZoom, which Thoma Bravo acquired majority control of in April 2022. UserTesting's CEO, Andy MacMillan, will lead the combined company. Additionally, the combined company will benefit from the operating capabilities, capital support, and industry expertise of Thoma Bravo and Sunstone Partners. […]

**Transaction Details**

The transaction, which was unanimously approved by the UserTesting board of directors, is currently expected to close in the first half of 2023, subject to customary closing conditions, including approval by UserTesting's stockholders and the receipt of required regulatory approvals. The UserTesting board of directors unanimously recommends that UserTesting stockholders vote in favor of the transaction at the Special Meeting of Stockholders to be called in connection with the transaction. Upon completion of the transaction, UserTesting's common stock will no longer be publicly listed and UserTesting will become a privately held company.

The agreement includes a "go-shop" period expiring at 11:59 p.m. Pacific time on December 10, 2022, which allows the UserTesting board of directors and its advisors to actively initiate, solicit and consider alternative acquisition proposals from third parties. UserTesting's board of directors will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and UserTesting does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

37. UserTesting management, including Defendants MacMillan and Pexton, prepared the two aforementioned sets of projections in connection with the Acquisition (the September and October Financial Forecasts). Both sets of projections forecasted UserTesting's revenue, among other metrics, and the October Projections were used by Morgan Stanley to prepare analyses in support of the fairness opinion provided to the Board on October 26, 2022 (the "Fairness Opinion").

38. Based on the unfair sales process, prior public statements by officers and directors of

the Company, UserTesting's financial and operating history, internal presentations by management, and presentations to the Board by Morgan Stanley, the October Financial Forecast failed to represent a reasonable estimate of UserTesting's financial prospects and the Board did not believe that "$7.50 per share in cash payable in the [Acquisition] was more favorable to [UserTesting] stockholders on a risk-adjusted basis than the potential value that might result from other alternatives reasonably available[.]" Further, the implied values produced by Morgan Stanley's analyses were false or misleading because they were based on the unreasonably low October Financial Forecast for the Company and thus failed to provide a reasonable estimate of UserTesting's present value.

39. UserTesting shareholders suffered damages in the amount of the difference between the price received in the Acquisition and the intrinsic value of their shares as calculated in accordance with recognized methods of valuation.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of UserTesting (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant. This action is properly maintainable as a class action because:

(a) the Class is so numerous that joinder of all members is impracticable. As of December 2, 2022, the record date to vote on the Merger, there were 147 million shares of UserTesting common stock outstanding, held by thousands of individuals and entities throughout the country. The actual number of former public stockholders of UserTesting will be ascertained through discovery;

(b) there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

   i. whether Defendants misrepresented material information in the Proxy in violation of Section 14(a) of the Exchange Act;
   ii. whether the Defendants violated Section 20(a) of the Exchange Act; and
   iii. whether the Class suffered damages.

(c) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

(f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**COUNT I**
**Against the Director Defendants and UserTesting**
**for Violations of Section 14(a) of the Exchange Act**

41. Plaintiff reiterates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not

false or misleading." 17 C.F.R. § 240.14a-9.

44. The Board issued the Proxy to solicit UserTesting shareholders' support for the Acquisition. Each of the Director Defendants reviewed and authorized the dissemination of the Proxy, which misrepresented and omitted the above-referenced material information, which in turn rendered the above-referenced sections of the Proxy materially false, misleading, and incomplete because such sections provided a false, misleading, and incomplete valuation picture of UserTesting. The Proxy contained untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.

45. The Director Defendants were aware of the misleading nature of the Proxy Misrepresentations but failed to ensure such information was disclosed in the Proxy in a non-misleading fashion, in violation of Section 14(a) and Rule 14a-9. The Director Defendants knew that the Proxy was materially false, misleading, and incomplete in regard to the above-referenced material information.

46. The Director Defendants reviewed and relied upon the material information identified above in connection with their decision to approve and recommend the Acquisition; indeed, the Proxy states that Morgan Stanley reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Morgan Stanley as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Director Defendants were privy to and had knowledge of the facts concerning UserTesting's true value, which was greater than the consideration the Company's former public shareholders received.

47. The Director Defendants knew that the material information identified above had been misrepresented and/or omitted in the Proxy, rendering the sections of the Proxy identified above to be materially false, misleading, and/or incomplete. Indeed, the Director Defendants were required to review Morgan Stanley's valuation analyses, question Morgan Stanley as to its derivation of fairness, and to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there were no material misstatements or omissions. After reviewing both the underlying materials and the Proxy, the Director Defendants

failed to provide a non-misleading proxy solicitation.

48. Each of the Director Defendants was responsible for ensuring that the Proxy was not misleading, but failed to do so.

49. UserTesting is liable for violations of the Exchange Act as the issuing entity of the Proxy and based on the Director Defendants' violations of the Exchange Act.

50. The above-referenced information that was mispresented and omitted in the Proxy was material to Plaintiff and the Class, who were deprived of their right to cast an informed vote because such misrepresentations and omissions were not corrected prior to the vote on the Acquisition and rendered the above-refenced sections of the Proxy materially false, misleading, and incomplete.

51. As a direct and proximate result of the dissemination of the materially false, misleading, and incomplete Proxy that the Director Defendants used to obtain shareholder approval of the Merger, Plaintiff and the Class have suffered damages and actual economic losses (i.e., the difference between the value they received as a result of the Acquisition and the true value of their shares at the time of the Acquisition) in an amount to be determined at trial. By reason of the misconduct detailed herein, the Director Defendants and UserTesting are liable pursuant to Section 14(a) of the Exchange Act and SEC Rule 14a-9.

**COUNT II**
**Against the Director Defendants for Violations of Section 20(a) of the Exchange Act**

52. Plaintiff reiterates each and every allegation set forth above as if fully set forth herein.

53. The Director Defendants acted as controlling persons of UserTesting within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of UserTesting, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false, misleading, and incomplete statements contained in the Proxy filed with the SEC, the Director Defendants had the power to influence and control— and did influence and control—directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially false, misleading, and incomplete.

54. Each of the Director Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Director Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the members of the Board to approve the Merger. Moreover, as members of the Board, each of the Director Defendants is responsible for signing the Proxy "By order of the Board of Directors." They were thus directly involved in preparing this document.

56. In addition, as the Proxy sets forth at length, and as described herein, the Director Defendants were involved in (i) negotiating, reviewing, and/or approving the Merger and (ii) preparing, reviewing, and/or approving the projections. The Proxy describes the various issues and information that the Director Defendants reviewed and considered. The Director Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Director Defendants have violated Section 20(a) of the Exchange Act. As set forth above, the Director Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Director Defendants are liable pursuant to Section 20(a) of the Exchange Act.

58. As a direct and proximate result of the Director Defendants' conduct, Plaintiff and the Class have suffered damages and actual economic losses (i.e., the difference between the value they received as a result of the Acquisition and the true value of their shares at the time of the Acquisition) in an amount to be determined at trial.

# COUNT III
**Against Defendant Jon Pexton for Violation of Section 20(a) of the Exchange Act**

59. Plaintiff reiterates each and every allegation set forth above as if fully set forth herein.

60. Defendant Pexton acted as a controlling person of UserTesting within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his position as an officer of UserTesting, significant involvement in the sales process and the Board meetings pertaining to it, significant involvement in the Company's operations and preparation of financial projections, including specifically the September and October Financial Forecasts, and intimate knowledge of the false, misleading, and incomplete statements contained in the Proxy filed with the SEC, Defendant Pexton had the power to influence and control—and did influence and control—directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially false, misleading, and incomplete.

61. Defendant Pexton knew (i) that the October Financial Forecast was not a reasonable estimate of the Company's prospects; (ii) that the October Financial Forecast would be used to prepare unreasonably low financial analyses and implied values of UserTesting; (iii) that these analyses and implied values would be used to support Morgan Stanley's Fairness Opinion for the Acquisition; (iv) that the Fairness Opinion would be used by the Board to as a basis for authorizing UserTesting's execution of the Acquisition Agreement; and (v) that Morgan Stanley's analyses and implied values for UserTesting would be disseminated to shareholders to induce support for the Acquisition. Pexton thus facilitated, and did not stop, the misconduct of the Director Defendants and UserTesting.

62. By virtue of the foregoing, Defendant Pexton has violated Section 20(a) of the Exchange Act. As set forth above, Defendant Pexton had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of his position as a controlling person, Defendant Pexton is liable pursuant to Section 20(a) of the Exchange Act.

63. As a direct and proximate result of Defendant Pexton's conduct, Plaintiff and the Class have suffered damages and actual economic losses (i.e., the difference between the value they

received as a result of the Acquisition and the true value of their shares at the time of the Acquisition) in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.  Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.  Awarding Plaintiff and the Class compensatory and/or rescissory damages sustained as a result of Defendants' wrongdoing, including, but not limited to, pre-judgment and post-judgment interest;

C.  Granting Plaintiff and the Class the costs and disbursements of this action, including reasonable attorneys' fees, expert fees, and expenses;

D.  Awarding extraordinary and/or equitable relief as permitted by law, equity, and the federal statutory provisions sued upon hereunder; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 21, 2023

Respectfully submitted,

 */s/ David E. Bower*
 David E. Bower

**OF COUNSEL**

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (310) 446-6652
Fax: (212) 202-7880
Email: dbower@monteverdelaw.com

*Counsel for Plaintiff*

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*