UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENNA DICKERSON,<br><br>Plaintiff,<br><br>v.<br><br>ANDY MACMILLAN, et al.,<br><br>Defendants. | Case No.  23-cv-01320-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS AND GRANTING ADMINISTRATIVE MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 31, 41, 42, 48, 52 |

Defendants' motion to dismiss this PSLRA case was heard before this Court on March 14, 2024.  Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** the motion for the following reasons.  Also before the Court are four administrative motions to seal.  ECF 31, 41, 48, 52; *see* ECF 59.  For the reasons stated below, the Court hereby **GRANTS** the administrative motions to seal.

## I.       BACKGROUND[1]

### A.       Factual Background

Defendant UserTesting is a company that went public on November 17, 2021, at $14 per share.  First Amended Complaint ("FAC") (ECF 32) ¶¶ 14, 34.  Following its Initial Public Offering (IPO), the company's stock declined, consistent with declines in the stock market.  FAC ¶ 35.  In 2020 and 2021, Defendant Andy MacMillan (UserTesting's Chief Executive Officer and former Board Chair) and other officers and directors met with Thoma Bravo, a private equity

---

[1] The Court accepts as true the factual allegations in the complaint and construes the pleadings in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

United States District Court<br>Northern District of California

firm, to discuss a potential acquisition of UserTesting by Thoma Bravo.  FAC ¶¶ 15, 22, 43.  In July of 2022, Thoma Bravo indicated its interest in acquiring UserTesting.  FAC ¶ 44.

On August 7, 2022, UserTesting held its second quarter earnings call, during which MacMillan stated that the market "continue[d] to see good interest and need for [the Company's] platform."  FAC ¶ 45-¶ 46 (alterations in original).  MacMillan also reported a "record second quarter with revenue of $48 million, up 36% year-over-year," which "represent[ed] [UserTesting's] sixth consecutive quarter of year-over-year subscription revenue growth of 40% or greater."  FAC ¶ 47 (alterations in original).  Defendant Jon Pexton (UserTesting's former Chief Financial Officer) added that UserTesting started experiencing problems in February 2022 but had a revenue growth rate of "29% to 31% year-over-year" and that the Company expected revenue in the third quarter of 2022 of $47.5 to $47.8 million or a growth rate of 23% to 26% year-over-year.  FAC ¶¶ 16, 48.

After the earnings call, analysts updated their price targets for UserTesting, with a consensus price target of $8.55 per share.  FAC ¶ 50.  On August 19, 2022, representatives of Thoma Bravo met with MacMillian and Pexton and informed them that Thoma Bravo's likely proposal range for an acquisition would be between $9 to $11 per share.  FAC ¶ 51.  UserTesting's Board met on August 26 and 30, 2022 to discuss the possible acquisition and to retain Morgan Stanley to advise the potential transaction.  FAC ¶¶ 52-53.  During the proposed acquisition, Morgan Stanley was UserTesting's financial advisor.  FAC ¶ 24.  Starting on September 3, 2022, Defendants and Morgan Stanley developed financial projections for the Company, the "September Forecast," and presented these projections to the Board.  FAC ¶¶ 56-57.  The September Forecast was based on a ████████████████████ for the Company containing quarter-by-quarter forecasts of revenue, gross profit, and free cash flow projections.  FAC ¶ 55.

On September 8, 2022, Thoma Bravo submitted a non-binding indication of interest to acquire all outstanding shares of UserTesting for $9.50 per share.  FAC ¶ 58.  The Board reviewed the proposal on September 10, 2022, and Thoma Bravo submitted a revised proposal for $10 per share on September 14, 2022.  FAC ¶¶ 60-61.  The Board considered the September 14 proposal at a September 16 meeting, and instructed Morgan Stanley to reach out to two other potential

United States District Court
Northern District of California

1    acquirers.  FAC ¶ 62.  On September 30, 2022, the last day of the third quarter, Defendants and

2    Morgan Stanley met with Thoma Bravo representatives to discuss anticipated 2022 third quarter

3    performance.  FAC ¶ 64.  According to the Proxy, the anticipated results provided to Thoma

4    Bravo "included revenue and calculated billings . . . that were lower than those anticipated by

5    Wall Street analysts, Thoma Bravo and the September Financial Forecast."  FAC ¶ 64; ECF 42-3

6    (Proxy).  Although calculated billings had grown less than expected, the Company's revenue

7    ███████████████████████████████████████████████.  FAC ¶¶ 65-66.

8        On October 3, 2022, Thoma Bravo informed Morgan Stanley that it was no longer willing

9    to proceed at the proposed price of $10 per share because of the company's 2022 third quarter

10   performance.  FAC ¶ 68.  The following day, Thoma Bravo indicated that it was prepared to

11   resume discussions at $7.50 per share.  FAC ¶ 69.  UserTesting rejected that proposal, terminated

12   Morgan Stanley, and disengaged from negotiations.  FAC ¶ 70.  On October 10, 2022, Defendants

13   provided Morgan Stanley with the "October Forecast," which ████████████████████████████

14   █████████████████.  FAC ¶¶ 71-73.  Morgan Stanley ██████████████████████████

15   ████████████████████████████████████████████████████████████████████

16   ████████████████.  FAC ¶ 72.

17       MacMillan, Pexton, and Sabet "appear to have created the new set of projections and

18   continued engaging with Thoma Bravo without the authorization or even awareness of the Board."

19   FAC ¶ 74.  On October 16, 2022, UserTesting's legal advisors sent a formal letter to Thoma Bravo

20   asking it to return or destroy all confidential information provided to it.  FAC ¶ 74.  On October

21   20, 2022, Thoma Bravo called MacMillian and informed him that it was willing to proceed at

22   $7.50 without conducting further due diligence, and MacMillan responded that Thoma Bravo

23   should put the offer in writing.  FAC ¶ 75.  Thoma Bravo submitted a non-binding written offer

24   for $7.50 that same day, and the Board formally considered the proposal on October 23, 2022, and

25   rehired Morgan Stanley.  FAC ¶ 76.  The Board met over the next several days, and on October

26   26, 2022, Morgan Stanley delivered an opinion that the acquisition agreement was fair from a

27   financial point of view to holders of UserTesting's common stock.  FAC ¶¶ 77-79.

28       On October 27, 2022, UserTesting issued a press release announcing the acquisition, and

3

stating that the transaction valued UserTesting at $1.3 billion, $700 million less than the IPO in November of 2021.  FAC ¶ 80.

On December 26, 2022, UserTesting issued a Schedule 14A ("Proxy") to stockholders inviting them to a special meeting and announcing the proposed merger.  FAC ¶ 3; ECF 42-3 (Proxy).  On January 10, 2023, UserTesting's shareholders voted to approve the acquisition by Thoma Bravo.  FAC ¶ 7.

**B.     Procedural Background**

On March 21, 2023, Plaintiff Brenna Dickerson initiated the instant suit against Defendants on behalf of herself and a putative class.  ECF 1.  On August 11, 2023, Plaintiff filed the First Amended Complaint, the operative complaint, alleging violations of Sections 14(a) and 20(a) of the Securities and Exchange Act ("Exchange Act").  Plaintiff alleges that Defendants made eight false or misleading statements in the Proxy:

1.  That UserTesting's "anticipated [third quarter 2022] results included revenue and calculated billings . . . that were lower than those anticipated by Wall Street analysts, Thoma Bravo and the September Financial Forecast."  FAC ¶¶ 5(i), 126-28.

2.  The October Forecast "reflected the potential impact of our financial results for the third quarter ended September 30, 2022 on future periods [*sic*], and which reflected reduced levels of revenue, gross margin, EBITDA and unlevered free cash flow as compared to the September Financial Forecast as a result of our revenue and billing results for the third quarter and estimates for the fourth quarter and trends in our end markets[.]"  FAC ¶¶ 5(ii), 131-33.

3.  "Morgan Stanley assumed that [the October Financial Forecast] had been reasonably prepared on bases reflecting the best currently available estimates and judgments of UserTesting's management of the future financial performance of UserTesting."  FAC ¶¶ 5(iii), 134.

4.  Morgan Stanley's fairness opinion was a "positive reason to support the Merger Agreement."  FAC ¶¶ 5(iv), 135-36.

5.  "The present values per share of UserTesting common stock calculated by Morgan Stanley using the unreasonably low October Forecast under: (a) a Discounted Cash Flow Analysis, namely '$3.59 to $5.17'; (b) a Discounted Equity Value Analysis, namely '$4.08 – 7.51'; and (c) a Precedent Transactions Multiples Analysis, namely '$6.92 – 10.77.'"  FAC ¶¶ 5(v), 137.

6.  "[T]he September Financial Forecast . . . was prepared by [Company] management . . . for the fiscal year ending December 31, 2022 through 2025."  FAC ¶¶ 5(vi), 138.

7. The September Forecast summary chart was "materially omissive" as it failed to provide the figures for UserTesting's projected ███████████ ██████ or disclose the figures for the ████████████████████████. FAC ¶¶ 5(vi), 56-57, 86, 139

8. The September Forecast summary chart was "materially omissive" because it failed to provide the figures for ████████████ revenue, gross profit, and ████████. FAC ¶¶ 5(vii), 56-57, 139-140.

The instant motion to dismiss followed.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Securities fraud cases have heightened pleading requirements as the complaint must satisfy both the pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA. *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).  Pursuant to Rule 9(b), claims alleging fraud must "state with particularity the circumstances constituting fraud . . . [.]" Fed. R. Civ. P. 9(b).  The PSLRA mandates that "the complaint shall specify each statement

alleged to have been misleading, [and] the reason[] why the statement is misleading . . . [.]" 15 U.S.C. § 78u–4(b)(1)(B).  The PSLRA further requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007) (quoting 15 U.S.C. § 78u–4(b)(2)).  This means a plaintiff must allege that "the defendant[] made false or misleading statements either intentionally or with deliberate recklessness." *In re VeriFone Holdings*, 704 F.3d at 701 (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)).

## III.    DISCUSSION

### A.    Administrative Motions to Seal

There are four pending administrative motions to seal the amended class action complaint, the motion to dismiss, the opposition to the motion to dismiss, and related exhibits and documents. ECF 31, 41, 48, and 52.

Defendants move to seal the information included in the following chart:

| Document title or description | Dkt. No. of redacted version | Dkt. No. of un-redacted version | Dkt. No. of decl. in support of sealing | Party with burden to substantiate need to seal | Full or partial sealing sought | Brief statement of reason for sealing |
|---|---|---|---|---|---|---|
| Amended Class Action Complaint | 36-2 | 36-1 | 36 | Defendants | Partial | Sensitive and confidential financial and business information; *see* Dkt. No. 36 at ¶¶ 3, 4, 6. |
| Motion to Dismiss Amended Class Action Complaint | 42 | 41-3 | 41-1 | Defendants | Partial | Sensitive and confidential financial and business information; |

United States District Court
Northern District of California

United States District Court
Northern District of California

| Document title or description | Dkt. No. of redacted version | Dkt. No. of un-redacted version | Dkt. No. of decl. in support of sealing | Party with burden to substantiate need to seal | Full or partial sealing sought | Brief statement of reason for sealing |
|---|---|---|---|---|---|---|
| | | | | | | *see* Dkt. No. 41-1 at ¶ 3. |
| Exhibit 7 to the Lee Decl. in Support of Motion to Dismiss Amended Class Action Complaint | | 41-4 | 41-1 | Defendants | Full | Sensitive and confidential financial and business information; *see* Dkt. No. 41-1 at ¶ 3. |
| Exhibit 8 to the Lee Decl. in Support of Motion to Dismiss Amended Class Action Complaint | | 41-5 | 41-1 | Defendants | Full | Sensitive and confidential financial and business information; *see* Dkt. No. 41-1 at ¶ 3. |
| Exhibit 9 to the Lee Decl. in Support of Motion to Dismiss Amended Class Action Complaint | | 41-6 | 41-1 | Defendants | Full | Sensitive and confidential financial and business information; *see* Dkt. No. 41-1 at ¶ 3. |
| Opposition to Motion to Dismiss Amended Class Action Complaint | 49 | 48-1 | 54-1 | Defendants | Partial | Sensitive and confidential financial and business information; *see* Dkt. No. 54-1 at ¶¶ 5-6. |
| Plaintiff's Appendix Summarizing Materially False or | 53 | 52-1 | 54-1 | Defendants | Partial | Sensitive and confidential financial and business |

| Document title or description | Dkt. No. of redacted version | Dkt. No. of un-redacted version | Dkt. No. of decl. in support of sealing | Party with burden to substantiate need to seal | Full or partial sealing sought | Brief statement of reason for sealing |
|---|---|---|---|---|---|---|
| Misleading Statements and Omissions Challenged in the Amended Complaint | | | | | | information; *see* Dkt. No. 54-1 at ¶¶ 5-6. |

Civil Local Rule 79-5 requires the party seeking to file a document or portions of it under seal to explain "(i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient." Civil L.R. 79-5(c)(1). The request must be "narrowly tailored to seal only the sealable material." *Id.* at 79-5(c)(3). A party seeking to seal records must provide "compelling reasons" to overcome the "strong presumption in favor of access." *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citations omitted); *see Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). The standard derives from the "common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana*, 447 F.3d at 1178) (citation omitted)). To overcome this strong presumption, the party seeking to seal judicial records must "articulate compelling reasons supported by specific factual findings . . . that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178-79 (citations and quotation marks omitted). The party must make a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). It is in the "sound discretion of the trial court" to determine what constitutes a "compelling reason" for sealing a court document. *Ctr. for Auto Safety*, 809 F.3d at 1097 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)). The protection of sensitive business information is a compelling reason to seal. *Id.*

United States District Court
Northern District of California

1  Defendants argue that the FAC and briefing and exhibits on the motion to dismiss contain

2  sensitive financial and business information based on non-public Company Board materials and

3  presentations.  ECF 36 ¶¶ 3-4; ECF 41 at 2.  Having considered Defendants' motion and

4  supporting declarations and applying the relevant standard, the Court finds compelling reasons to

5  seal the documents, and citations thereto, listed above.  To the extent the FAC, Defendants'

6  Motion to Dismiss, Plaintiff's Opposition, and Plaintiff's Appendix include direct quotations from

7  or references to substantive provisions of documents containing proprietary business information,

8  the Court **GRANTS** the motions to partially seal the documents as proposed in the redacted

9  versions filed.  The exhibits attached in support of the Motion to Dismiss, the September 1, 2022

10  "Long Term Financial Plan: 2023-2025," the September 10, 2022 "Board Presentation," and the

11  October 26, 2022 "Valuation Materials Underlying Fairness Opinion," also contain sensitive,

12  competitive business information, including non-public Board materials and presentations by

13  financial advisors, that the parties have agreed would remain confidential.  For these reasons, the

14  Court **GRANTS** the administrative motions to file these exhibits fully under seal.

15  **B.      Judicial Notice**

16  Defendants seek judicial notice of nine exhibits: excerpts of UserTesting's Proxy and

17  Supplemental Proxy Statement (Exs. 1 and 2); UserTesting's quarterly and full year earnings

18  release on February 28, 2022, (Ex. 3) quarterly earnings release on May 4, 2022, (Ex. 4), on

19  August 4, 2022 (Ex. 5), and on October 27, 2022 (Ex. 6), filed with the SEC on the respective

20  dates; and reports and presentations shared with UserTesting's Board of Directors and referred to

21  by Plaintiffs in the FAC (Exs. 7, 8, and 9).  ECF 42-12.

22  While the scope of review on a motion to dismiss is generally limited to the contents of the

23  complaint, under Evidence Rule 201, courts may take judicial notice of facts that are "not subject

24  to reasonable dispute."  Fed. R. Evid. 201(b).  Courts take judicial notice of documents on which

25  complaints necessarily rely, *see, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.

26  2001), publicly available financial documents such as SEC filings, *Metzler Inv. GMBH v.*

27  *Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008), and publicly available articles or

28  other news releases of which the market was aware, *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189

1    F.3d 971, 981 n.18 (9th Cir. 1999).

2        Plaintiff does not object but argues that specific factual assertions within the documents

3    should not be accepted as true when they conflict with the First Amended Complaint.  Opp. (ECF

4    49) at 11 (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018)).  The

5    Court may not assume the truth of an incorporated document "if such assumptions only serve to

6    dispute facts in a well-pleaded complaint."  *Khoja*, 899 F.3d at 1003.  Accordingly, the Court

7    takes judicial notice of the incorporated documents but does not assume the truth of disputed facts.

8        **C.      Section 14(a) Claim**

9        Section 14(a) of the Exchange Act makes it unlawful to solicit a proxy "in contravention of

10   such rules and regulations as the Commission may prescribe as necessary or appropriate in the

11   public interest or for the protection of investors."  *Seinfeld v. Bartz*, 322 F.3d 693, 696 (9th Cir.

12   2003) (quoting 15 U.S.C. § 78n(a)).  Section 14(a) and SEC Rule 14a–9 "disallow the solicitation

13   of a proxy by a statement that contains either (1) a false or misleading declaration of material fact,

14   or (2) an omission of material fact that makes any portion of the statement misleading."

15   *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000); *see also* 15 U.S.C. § 78n(a);

16   17 C.F.R. § 240.14a–9(a).  "In addition, a Section 14(a), Rule 14a–9 plaintiff must demonstrate

17   that the misstatement or omission was made with the requisite level of culpability and that it was

18   an essential link in the accomplishment of the proposed transaction."  *Seinfeld*, 322 F.3d at 697

19   (quoting *Desaigoudar*, 223 F.3d at 1022).

20       The pleading requirements under Rule 9(b) apply where a claim is "grounded in fraud" or

21   "sound[s] in fraud."  *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023).  "[I]f 'a

22   plaintiff . . . choose[s] . . . to allege in the complaint that the defendant has engaged in fraudulent

23   conduct,' then 'the pleading of that claim as a whole must satisfy the particularity requirement of

24   Rule 9(b).'"  *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)).

25   Plaintiff's theory is that UserTesting management decided to downwardly revise its projections to

26   secure shareholder approval of Thoma Bravo's offer, and not based on its own good faith

27   judgments in the financial outlook of the company.  Opp. at 7-8.  Because Plaintiff asserts that

28   UserTesting management knew that the financial projections in the October Forecast were false

1   and were made to convince shareholders to accept the merger with Thoma Bravo, the claim

2   "sounds in fraud."  *See In re Finjan Holdings*, 58 F.4th at 1057.

3         Plaintiff challenges eight statements that Defendants made in the Proxy as materially false,

4   misleading, or omissive.  FAC ¶ 5.  Defendants move to dismiss Plaintiffs' Section 14(a) claim

5   based on each of these statements, arguing (1) protection under the PSLRA safe harbor; (2) the

6   opinion statements are not subjectively or objectively false; (3) none of the statements are

7   materially false or misleading; and (4) Plaintiff has not alleged the requisite state of mind.  In

8   addition, Defendants argue that Plaintiff has not alleged that Defendant Sabet is liable for any of

9   the statements.  Mot. (ECF 42).  The Court analyzes these contentions.

10         **1.    PSLRA Safe Harbor**

11         Defendants first argue that all but one challenged statement are protected under the PSLRA

12   safe harbor.  Mot. at 17.  Under the PSLRA's "safe harbor" rule, a person is not liable for a false

13   or misleading "forward-looking statement" if 1) it is identified as forward-looking and is

14   "accompanied by meaningful cautionary statements identifying important factors that could cause

15   actual results to differ materially" or 2) the forward-looking statement is "immaterial" or 3) the

16   plaintiff fails to prove it is made by a natural person with "actual knowledge . . . that the statement

17   was false or misleading."  15 U.S.C. § 78u-5(c); *see Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29

18   F. 4th 611, 620 (9th Cir. 2022).  A forward-looking statement is "any statement regarding (1)

19   financial projections, (2) plans and objectives of management for future operations, (3) future

20   economic performance, or (4) the assumptions 'underlying or related to' any of these issues."  *No.*

21   *84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936

22   (9th Cir. 2003) ("*America West*") (citing 15 U.S.C. § 78u-5(i)).

23         Defendants argue that the statements are forward-looking, they identified them as such and

24   provided meaningfully cautionary language, and that there is no evidence that the Defendants

25   knew the statements were false or misleading.  Mot. at 17-24.  The Court first assesses whether the

26   statements are forward-looking before considering whether the statements are accompanied by

27   meaningfully cautionary language or were made without actual knowledge of falsity.

28

### a.        Forward-Looking Statements

Defendants argue that the second Proxy statement is forward looking because it describes the October Forecast and its underlying assumptions.  Mot. at 18.

- Statement Two: The "October Financial Forecast . . . reflected the potential impact of our financial results for the third quarter ended September 30, 2022 on future periods [*sic*], and which reflected reduced levels of revenue, gross margin, EBITDA [earnings before interest, taxes, depreciation, and amortization] and unlevered free cash flow as compared to the September Financial Forecast as a result of our revenue and billing results for the third quarter and estimates for the fourth quarter and trends in our end markets[.]" FAC ¶ 5(ii) (citing Proxy at 38).

Plaintiff responds that the portion of the statement that says that the October Financial Forecast "reflected reduced levels . . . as a result of our revenue and billing results . . . and trends in our markets," FAC ¶ 5(ii), is not forward-looking as it conveys the purported reason why Defendants lowered projections and was thus "verifiable when it was uttered."  Opp. at 24 (citing *In re Twitter, Inc. Sec. Litig.*, No. 16-CV-05314-JST, 2021 WL 4166725, at *2 (N.D. Cal. Sept. 14, 2021).

Statements about "the assumptions underlying or relating" to a declared objective are forward-looking statements.  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) (quoting 15 U.S.C. § 78u-5(i)(1)(D)).  In *Wochos*, the Ninth Circuit held that statements that Tesla was "on track" to achieve a goal and that "there are no issues" that "would prevent" Tesla from achieving the goal are forward-looking statements because they were "merely alternative ways of declaring or reaffirming the objective itself."  *Id.* at 1191-92.  Here, the second statement describes the assumptions underlying the October Forecast – that it was based on the impact of third quarter results on future quarters and had lowered projections than the September Forecast due to third quarter results and market trends.  FAC ¶ 5(ii).  Plaintiff argues that the statement was not forward-looking because it can be proven true or false whether the October Forecast is based on third quarter revenue and billing or whether Defendants lowered the projections to facilitate the merger.  Opp. at 24.  Because the safe harbor protects the "'assumptions' about future events on which [the] goal is based," *Wochos*, 985 F.3d at 1192, the Court finds that statement two is

United States District Court
Northern District of California

1    forward-looking.[2]

2        Defendants also argue that the third statement is forward-looking because it reaffirms the

3    October Forecast.  Mot. at 19.

4    •  Statement Three: Morgan Stanley assumed that [the October Forecast] had been
5       reasonably prepared on bases reflecting the best currently available estimates and
        judgments of UserTesting's management of the future financial performance of
6       UserTesting.  FAC ¶ 5(iii).

7    Plaintiff argues that present opinions about the basis for financial projections do not fall within the

8    PSLRA safe harbor.  Opp. at 24-25 (citing *Karri v. Oclaro, Inc.*, No. 18-CV-03435-JD, 2020 WL

9    5982097, at *5 (N.D. Cal. Oct. 8, 2020) (concluding that non-forward-looking statements included

10   1) that the forecast was "reasonably prepared on bases reflecting the best currently available

11   estimates . . ." and 2) implied equity reference ranges per share calculated by the company's

12   financial advisor and derived from the lower financial projections)).  However, the Ninth Circuit

13   has affirmed the opposite conclusion.  In *Golub v. Gigamon*, the plaintiff challenged statements

14   relating to the Board's belief that a set of updated financial protections were a "better reflection of

15   Gigamon's financial outlook."  *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1046 (N.D. Cal.

16   2019), *aff'd*, 994 F.3d 1102 (9th Cir. 2021), and *aff'd*, 847 F. App'x 368 (9th Cir. 2021).  There,

17   the company updated its projections after it had two disappointing quarters of results.  *Id.* at 1047.

18   The court reasoned that taking the view that "an expression of a 'present belief' in a forward-

19   looking statement is a 'present fact' – and therefore not itself a forward-looking statement – would

20   work an end-run around the PSLRA's safe harbor provision [as] [e]xpressing confidence or lack

21   thereof in a given projection is not different from making a projection."  *Id.* at 1048 (citations

22   omitted).  Thus, despite the company ultimately having a "record-setting" year, the court refused

23   to consider a "fraud by hindsight" claim and found that the statements were protected under the

24   _____

25   [2] Defendants move to dismiss the claim based on the second statement for the additional reason
     that Plaintiff has not alleged that the statement is false or misleading.  Mot. at 26 n.7.  Plaintiff
26   argues that Defendants could not justify significant cuts to their projections based on one quarter
     of lower billings figures.  Opp. at 13.  Although Plaintiffs argue that the revisions were pretextual,
27   the FAC fails to include factual allegations that the downward revision based on lower calculated
     billings numbers was unjustified.  Thus, even if the second statement were not protected under the
28   safe harbor, the FAC does not allege that statement two is false or misleading as written.

United States District Court
Northern District of California

1   PSLRA safe harbor.  *Id.*

2      Here, as in *Golub*, the third statement was based on the October Forecast, which the

3   company made after a disappointing third quarter.  An inherent assumption in a financial

4   projection is that it was reasonably prepared.  *See Golub*, 372 F. Supp. 3d at 1048.  Plaintiff argues

5   that the statement is not protected by the PSLRA safe harbor because the October Forecast was

6   false.  Opp. at 26-27.  However, that is precisely what the safe harbor protects.  "[E]ven if a

7   statement is objectively false or misleading, the PSLRA provides a 'safe harbor' for forward-

8   looking statements . . .[.]"  *Weston Fam.*, 29 F.4th at 620.  Thus, the third statement is forward-

9   looking.

10      Defendants also contend that the fourth Proxy statement is protected under the PSLRA safe

11  harbor.  The fourth Proxy statement states:

12  - Statement Four: Morgan Stanley's fairness opinion was a "positive reason to support the
13    Merger Agreement."  FAC ¶¶ 5(iv), 136.

14  Defendants' only explanation for why this is forward-looking is that it is a "reaffirmation or

15  restatement of the underlying October Forecast."  Mot. at 19.  The Court cannot agree that a

16  present opinion about Morgan Stanley's fairness opinion is forward-looking.

17      Defendants next challenge statement five as forward-looking:

18  - Statement Five: The implied present values per share of UserTesting common stock
19    calculated by Morgan Stanley using the October Forecast.  *Id.* ¶ 5(v).

20  The implied present values of common stock in statement five were based on financial projections

21  and are thus protected by the safe harbor.  *See Police Ret. Sys. of St. Louis v. Intuitive Surgical,*

22  *Inc.*, 759 F.3d 1051, 1055-59 (9th Cir. 2014).  Plaintiff argues that because the statement is a

23  "present" value, it cannot be protected under the safe harbor.  Opp. at 26.  However, Plaintiff

24  ignores Ninth Circuit authority which holds that a plaintiff must plead that a statement "goes

25  beyond" an "assumption" contained in a forward-looking statement and must instead contain an

26  "express or implied 'concrete' assertion concerning a specific 'current or past fact.'"  *Wochos*, 985

27  F.3d at 1191 (citation omitted).  The fifth statement calculates an implied present value based on

28  future projections from the October Forecast.  As an assumption contained in a forward-looking

United States District Court
Northern District of California

statement, the implied present values are forward looking.

Finally, Defendants argue that statements six, seven, and eight, which Dickerson alleges are misleading by omission, are protected by the safe harbor.  Mot. at 20 (citing 15 U.S.C. § 78u-5(c)(1)).

- <u>Statement Six</u>: "[T]he September Financial Forecast . . . was prepared by [Company] management . . . for the fiscal year ending December 31, 2022 through 2025" failed to disclose that the September Forecast also covered ███████████████████.  FAC ¶ 5(vi).

- <u>Statement Seven</u>: The September Forecast summary chart failed to disclose projections for ████████████████████████████.  FAC ¶ 5(vii).

- <u>Statement Eight</u>: The September Forecast failed to provide the figures for ██████ revenue, gross profit, and ████████  FAC ¶ 5(viii).

Plaintiff argues that the safe harbor does not apply to these statements of omissions because they omit "present facts," i.e., that Defendants "actually prepared projections in September for ████ ████."  Opp. at 27.  However, the safe harbor protects Defendants who do not fully disclose future projections.  *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir. 2010) (holding that incomplete disclosures about earnings projections fell within the PSLRA safe harbor). Accordingly, statements six, seven, and eight are also forward-looking statements.

Because statements two, three, five, six, seven, and eight are forward-looking, the Court moves on to determine whether the statements were either accompanied by meaningfully cautionary language or were made without Defendants' actual knowledge that the statements were false.

### b.    Meaningfully Cautionary Statements

Forward-looking statements are protected under the PSLRA safe harbor if they are accompanied by "meaningful cautionary statements" or are made without actual knowledge that the statement was false or misleading.  15 U.S.C. § 78u-5(c).  Meaningful cautionary statements "identify[] important factors that could cause actual results to differ materially from those in the forward-looking statement."  *Id*.  Cautionary language must "precisely" and "directly" address the statements at issue.  *In re BioMarin Pharm. Inc. Sec. Litig.*, No. 3:20-CV-06719-WHO, 2022 WL

1  597037, at *4 (N.D. Cal. Feb. 28, 2022) (citation omitted) (citing cases).

2          Defendants included language in the Proxy identifying the financial projections as

3  forward-looking and specifically cautioning shareholders about the uncertainties related to the

4  projections.  Defendants stated that the "Management Projections constitute forward-looking

5  information and are subject to many risks and uncertainties that could cause actual results to differ

6  materially from the results forecasted . . . [.]"  Proxy at 52.  The Proxy lists these risks and

7  uncertainties, including "industry performance, general business and economic conditions,

8  customer requirements, [and] . . . adverse changes in applicable laws . . . [.]"  *Id.*  The Proxy also

9  states that these projections will be affected by the company's "ability to achieve strategic goals,

10 objectives and targets," and that the projections "reflect assumptions as to certain business

11 decisions that are subject to change and cannot, therefore, be considered a guarantee of future

12 operating results, and this information should not be relied on as such."  *Id.*  The Proxy warns: "In

13 light of the foregoing factors, and the uncertainties inherent in the Management Projections, our

14 stockholders are cautioned not to place undue, if any, reliance on the Management Projections."

15 *Id.*  Further, the Proxy explains that Morgan Stanley made "numerous assumptions with respect to

16 industry performance" and business and financial conditions, "many of which are beyond

17 UserTesting's control," such as changes in the financial market and industry.  *Id.* at 49-50.  "Any

18 estimates contained in Morgan Stanley's analyses are not necessarily indicative of future results or

19 actual values, which may be significantly more or less favorable than those suggested by such

20 estimates."  *Id.*

21          This language is similar to language the Ninth Circuit has approved as meaningfully

22 cautionary:

23          Before we begin, I would like to inform you that comments mentioned on today's call
           may be deemed to contain forward-looking statements. Actual results may differ
24         materially from those expressed or implied, as a result of certain risks and
           uncertainties. These risks and uncertainties are described in detail in the company's
25         [SEC] filings.  Prospective investors are cautioned not to place undue reliance on such
           forward-looking statements.
26

27 *Intuitive Surgical*, 759 F.3d at 1059; *see also In re Cutera*, 610 F.3d at 1112 (concluding that the

28 following language was meaningfully cautionary: "[T]hese prepared remarks contain forward-

United States District Court
Northern District of California

1    looking statements concerning future financial performance and guidance . . . management may

2    make additional forward-looking statements in response to questions, and . . . factors like Cutera's

3    ability to continue increasing sales performance worldwide could cause variance in the results.").

4           Plaintiff argues that the language here failed to meaningfully caution that Defendants did

5    not believe that the October Forecast was their reasonably prepared best estimate.  Opp. at 28

6    (citing *In re SeeBeyond Techs. Corp. Secs. Litig.*, 266 F. Supp. 2d 1150, 1165 (C.D. Cal. 2003)

7    (holding that cautionary language accompanying a forward-looking statement made with actual

8    knowledge that it is false or misleading "can only be meaningful if it either states the belief of the

9    speaker that is false or misleading or, at the very least, clearly articulates the reasons why it is false

10   or misleading.")).  However, where a party identifies a statement as forward-looking and

11   accompanies it with meaningfully cautionary language, "the state of mind of the individual

12   making the statement is irrelevant, and the statement is not actionable regardless of the plaintiff's

13   showing of scienter."  *In re Cutera*, 610 F.3d at 1112.  Although Plaintiff argues that Defendants

14   did not genuinely believe that the financial projections in the Proxy were true, Defendants' state of

15   mind is not relevant because of the detailed language warning investors about the specific risks

16   inherent in these projections and cautioning them not to place undue reliance on them.

17   Accordingly, statements two, three, five, six, seven, and eight are protected under the PSLRA safe

18   harbor and the Court **DISMISSES** the claims based on those statements.

19                           **2.      Expressions of Opinion**

20          Defendants move to dismiss the claims based on statements three, four, and five on the

21   additional basis that they are expressions of opinion that are not subjectively or objectively false.

22   Mot. at 25-27. [3]  Plaintiff does not dispute that these are expressions of opinion.  Opp. at 13-14.

23   Although the Court has already found that statement three is protected under the PSLRA, it

24   additionally finds that the Section 14(a) claim based on statement three and statement four may be

25

26   _____

27   [3] Although the parties do not dispute that statement five is an opinion statement, the Court cannot find that statement five (the implied present values of shares) is an opinion statement, as it is not a statement of "reason[], opinion, or belief."  *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 (1991).

28

United States District Court
Northern District of California

dismissed because Plaintiff has not alleged that the statements are objectively or subjectively false.

- Statement Three: "Morgan Stanley assumed that [the October Financial Forecast] had been reasonably prepared on bases reflecting the best currently available estimates and judgments of UserTesting's management of the future financial performance of UserTesting.  Morgan Stanley expressed no view as to such financial projections or the assumptions on which they were based."  FAC ¶¶ 5(iii).

- Statement Four: Morgan Stanley's fairness opinion was a "positive reason to support the Merger Agreement."  FAC ¶¶ 5(iv).

Expressions of opinions – as opposed to statements of fact – are only actionable if they are both subjectively and objectively false or misleading.  *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1162 (9th Cir. 2009) (citing *Va. Bankshares*, 501 U.S. at 1094-96).  The parties dispute whether Plaintiff has shown that statements three are four are objectively and subjectively misleading.

Statements three and four are opinions, as they "inherently reflect the speaker's assessment of and judgment about the underlying circumstances."  *Markette v. XOMA Corp.*, No. 15-CV-03425-HSG, 2017 WL 4310759, at *4 (N.D. Cal. Sept. 28, 2017).  In pleading the falsity of opinion statements such as these, Plaintiff "must allege both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue."  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) (citation omitted).  As the Supreme Court explained in *Omnicare*, "a statement of opinion is not misleading just because external facts show the opinion to be incorrect."  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).  "[W]hether an omission makes an expression of opinion misleading always depends on context."  *Id.* at 190.

Plaintiff contends that the claim regarding the third statement is "predicated on the fact that the Defendants – UserTesting's management – did not actually hold such a belief" that the October Forecast was reasonably prepared.  Opp. at 16.  However, she has alleged no facts allowing the Court to make such an inference.  Plaintiff also has not alleged that Defendants did not believe that the fairness opinion was a reason to support the merger.  Plaintiff argues that the allegations here are like those in *Karri*, where the court found that a downward revision of

financial projections was misleading or false when they were made at a time when the financial

community stated that the company was "poised for growth . . . and that its stock was

undervalued." 2020 WL 5982097 at *6. However, here, UserTesting's calculated billings

decreased during the third quarter between the September and October financial projections.

FAC ¶ 65. In *Karri*, there were no allegations that any financial metrics had decreased before the

company revised its projections. Plaintiff also argues that MacMillan's statement touting the

Company's "strong third quarter results" and record revenue," FAC ¶ 67, show the subjective

falsity of the statements that the financial projections were reasonably prepared. Opp. at 19.

However, the fact that MacMillan made positive statements about the Company's future does not

create an inference that relying on the October Forecast misrepresented the value of the Company.

*See Golub*, 372 F. Supp. 3d at 1048.

Ultimately, while Plaintiff disagrees that the calculated billings decrease supported

revising the financial projections, she has not provided factual allegations that the statements were

objectively false or that Defendants subjectively did not believe them to be true. Accordingly, the

Court **DISMISSES** the claims based on statements three and four.

### 3. Materially False or Misleading

Defendants next argue that Plaintiff has not alleged that the first Proxy statement is

materially false or misleading. Mot. at 24-25. Plaintiff challenges statement one as false because

the statement indicates that revenue was lower than anticipated, ██████████████████

███████████████████████████:

- <u>Statement One</u>: The Company's "anticipated [Q3 2022 results as communicated to Thoma Bravo on September 30, 2022] included revenue and calculated billings . . . that were lower than those anticipated by Wall Street analysts, Thoma Bravo and the September Financial Forecast." FAC ¶ 5(i) (citing Proxy at 35) (alteration in original).

Defendants argue that this statement is not false or misleading because calculated billings fell

short of expectations. Mot. at 24-25 (citing Proxy at 35).

According to the allegations in the FAC, calculated billings were lower than anticipated.

FAC ¶ 65. Thus, the portion of the first statement referencing calculated billings was not false.

However, in moving to dismiss the claim based on this statement, Defendants fail to address that

revenue in the third quarter ███████████████████████████████████████.

*See id.* Defendants argue on reply that the statement is not false because it does not include the word "both" in front of "revenue and calculated billings."  Reply (ECF 55) at 8.  Defendants' argument does not change the fact that the statement says that the anticipated results "included revenue *and* calculated billings . . . that were lower than those anticipated . . ."  FAC ¶ 5(i) (citing Proxy at 35) (emphasis added).

Defendants also argue that because the third quarter results were reported publicly on October 27, 2022, months before the Proxy was published, shareholders could not be misled about revenue results.  Mot. at 25 n.6.  However, "investors are not generally required to look beyond a given document to discover what is true and what is not."  *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 887 (9th Cir. 2008); *see In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1114 (9th Cir. 1989) ("Ordinarily, omissions by corporate insiders are not rendered immaterial by the fact that the omitted facts are otherwise available to the public.").  Accordingly, the Court finds that Dickerson has sufficiently alleged that the first Proxy statement is false or misleading.

### 4. Defendants' State of Mind

Defendants further argue that Plaintiff failed to plead particularized facts that each individual defendant acted with the requisite state of mind.  Mot. at 30-31.  Section 14(a) claims do not require scienter, and instead require only a showing of negligence.  *See In re Finjan Holdings, Inc.*, 58 F.4th at 1058; *see, e.g.*, *Mehedi v. View, Inc.*, No. 21-CV-06374-BLF, 2023 WL 3592098, at *14 (N.D. Cal. May 22, 2023); *see also Varjabedian v. Emulex Corp.*, 888 F.3d 399, 408 (9th Cir. 2018) ("[B]ecause the text of the first clause of Section 14(e) is devoid of any suggestion that scienter is required, we conclude that the first clause of Section 14(e) requires a showing of only negligence, not scienter.").  Plaintiff fails to respond to Defendants' argument, and thus concedes it.  *See Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1146 (N.D. Cal. 2020) ("Plaintiff fails to respond to this argument and therefore concedes it through silence.") (quoting *Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010)).  As Plaintiff fails to plead particularized facts "giving rise to a strong inference that [each] defendant acted with the required state of mind," *see* 15 U.S.C. § 78u–4(b)(2), the Court

United States District Court
Northern District of California

1    **DISMISSES** the Section 14(a) claim with leave to amend.[4]

2        **D.**      **Section 20(a) Claim**

3          To state a Section 20(a) claim, a plaintiff must allege both "a primary violation of federal

4    securities law" and "that the defendant exercised actual power or control over the primary

5    violator." *Dearborn Heights*, 856 F.3d at 623 (quoting *Zucco Partners*, 552 F.3d at 990) (internal

6    quotation marks omitted); 15 U.S.C. § 78t(a); *see In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046,

7    1052 (9th Cir. 2014) (requiring "a primary violation of underlying federal securities laws" to

8    establish a cause of action under Section 20(a)).  Because Plaintiff has failed to allege a Section

9    14(a) claim, the Section 20(a) claim also fails.  Accordingly, the Court **DISMISSES** the Section

10   20(a) claim with leave to amend.

**IV.**    **CONCLUSION**

12         For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's

13   complaint with leave to amend.  Any amended complaint must be filed by **September 26, 2024**.

14   No additional claims or parties may be added without leave of Court or stipulation of Defendants.

15         This Order is the redacted version of the Order filed under seal.  ECF 60.  The parties met

16   and conferred and submitted a new proposed redacted version of the sealed Order on September

17   4, 2024 that incorporated the Court's rulings on the administrative motions to seal.

18         **IT IS SO ORDERED.**

19   Dated: September 16, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

---

[4] Because the Court dismisses the Section 14(a) claim, it does not assess whether Plaintiff has alleged that Defendant Sabet made any misstatements.