DEAN S. KRISTY (CSB No. 157646)
dkristy@fenwick.com
FIONA Y. TANG (CSB No. 298101)
ftang@fenwick.com
JUSTIN A. STACY (CSB No. 339376)
jstacy@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:    415.875.2300
Facsimile:    415.281.1350

FELIX S. LEE (CSB No. 197084)
flee@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

Attorneys for Defendants
ANDY MACMILLAN and USERTESTING, INC.

FENWICK & WEST LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENNA DICKERSON, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ANDY MACMILLAN and USERTESTING, INC.,<br><br>Defendants. | Case No.: 3:23-cv-01320-AMO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:        December 19, 2024<br>Time:        2:00 p.m.<br>Courtroom: 10, 19th Floor<br>Judge:      Hon. Araceli Martínez-Olguín<br>Trial Date:  None set |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 2

I.      INTRODUCTION ................................................................................... 2

II.     FACTUAL BACKGROUND ................................................................... 3

        A.      The Relevant Parties ............................................................... 3

        B.      The January 12, 2023 Merger between UserTesting and Thoma
                Bravo ............................................................................................ 4

                1.      After Going Public and Experiencing a Subsequent
                        Sustained Decline in its Stock Price, UserTesting
                        Receives an Indication of Interest From Thoma Bravo ................. 4

                2.      UserTesting Suffers a Massive Billings Shortfall in
                        Q3FY2022, Indicating a Significant Future Decline in
                        Demand, Which Causes Thoma Bravo to Revisit Its
                        Offer ...................................................................................... 5

                3.      The Merger Closes, With Shareholders Receiving a
                        Massive 94% Premium For Their Shares, and No Other
                        Bidders Emerge ..................................................................... 6

        C.      The Merger Is Consummated Following Robust Disclosures in
                the Proxy and Subsequent Supplemental Disclosures ............................... 6

        D.      The Litigation ............................................................................. 7

                1.      The Court Dismisses the Amended Complaint ............................ 7

                2.      The Second Amended Complaint ............................................. 7

III.    PLAINTIFF'S CLAIMS ARE SUBJECT TO STRICT PLEADING
        REQUIREMENTS ................................................................................. 9

IV.     THE SAC FAILS TO CURE THE DEFICIENCIES IDENTIFIED BY
        THE COURT ...................................................................................... 10

        A.      Statement No. 2 Concerning the October Forecast Is Protected
                By the Safe Harbor ...................................................................... 10

                1.      Statement No. 2 is Forward-Looking ....................................... 10

FENWICK & WEST LLP

# TABLE OF CONTENTS
### (Continued)

**Page(s)**

2. Statement No. 2 Was Accompanied By Meaningful Cautionary Language ..................................................................... 11

3. Plaintiff Failed To Plead Particularized Facts Showing Defendants' Knowledge Of Falsity As to Statement No. 2 ..................................................................................................... 12

V. PLAINTIFF FAILS TO PLEAD A FALSE OR MISLEADING STATEMENT ........................................................................................ 14

    A. The Challenged Statement No. 1 Regarding UserTesting's Q3 Results Is Not Actionable................................................................. 14

    B. The SAC Pleads No Particularized Facts Demonstrating That Statement No. 2 Is False and Misleading.................................. 16

VI. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE THAT EITHER DEFENDANT ACTED WITH THE REQUIRED NEGLIGENT STATE OF MIND ......................................................... 17

    A. Plaintiff Must Plead Her Section 14 Claim with Particularized Facts Demonstrating Negligence ............................................... 17

    B. Plaintiff Fails to Plead the Required Facts Showing Negligence, and Conclusory Allegations Regarding Mr. MacMillian's Position as CEO Do Not Suffice as a Matter of Law.............................. 18

VII. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ...................................... 20

VIII. CONCLUSION .................................................................................... 22

FENWICK & WEST LLP

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Bailey v. Zendesk, Inc.*,
  2024 WL 1807943 (N.D. Cal. Apr. 24, 2024) ........................................................................20

*Bodri v. GoPro, Inc.*,
  252 F. Supp. 3d 912 (N.D. Cal. 2017) ...................................................................................15

*Butala v. Owlet, Inc.*,
  2024 WL 3648141 (C.D. Cal. Aug. 5, 2024) ..........................................................................18

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) ...................................................................................4

*Desaigoudar v. Meyercord*,
  223 F.3d 1020 (9th Cir. 2000).......................................................................................9, 10, 17

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)................................................................................................................20

*Golub v. Gigamon, Inc.*,
  372 F. Supp. 3d 1033 (N.D. Cal. 2019) .................................................................................14

*Golub v. Gigamon Inc.*,
  847 F. App'x 368 (9th Cir. 2021) ..........................................................................................13

*Gray v. Wesco Aircraft Holdings, Inc.*,
  847 F. App'x 35 (2d Cir. 2021)..............................................................................................21

*In re Cutera Securities Litig.*,
  610 F.3d 1103 (9th Cir. 2010)................................................................................................12

*In re Finjan Holdings, Inc.*,
  58 F.4th 1048 (9th Cir. 2023)...................................................................................................9

*In re McKesson HBOC, Inc. Securities Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................................................17

*In re Ocera Therapeutics, Inc. Securities Litig.*,
  2018 WL 7019481 (N.D. Cal. Oct. 16, 2018), *aff'd*, 806 F. App'x 603 (9th Cir. 2020)
  ....................................................................................................................................17, 20, 21

*In re Sequenom, Inc. Stockholder Litig.*,
  2023 WL 4833465 (S.D. Cal. July 27, 2023) ........................................................................16

*In re Tesla, Inc. Securities Litig.*,
  2023 WL 4032010 (N.D. Cal. June 14, 2023) .......................................................................15

*Jackson v. Fischer*,
  931 F. Supp. 2d 1049 (N.D. Cal. 2013) .................................................................................19

FENWICK & WEST LLP

1
2

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

3    *Kampe v. Volta Inc.*,
       2024 WL 308262 (N.D. Cal. Jan. 26, 2024) ...........................................................9

4
5    *Karp v. First Conn. Bancorp, Inc.*,
       535 F. Supp. 3d 458 (D. Md. 2021), *aff'd*, 69 F.4th 223 (4th Cir. 2023) ...............20

6    *Khoja v. Orexigen Therapeutics, Inc*,
       899 F.3d 988 (9th Cir. 2018)......................................................................................4

7
8    *Knollenberg v. Harmonic, Inc.*,
       152 F. App'x 674 (9th Cir. 2005) ...............................................................................9

9    *Krieger v. Atheros Commc'ns, Inc.*,
10     2012 WL 1933559 (N.D. Cal. May 29, 2012) ....................................................20, 21

11   *Mehedi v. View, Inc.*,
       2023 WL 3592098 (N.D. Cal. May 22, 2023) ...........................................................17

12   *Mehedi v. View, Inc.*,
13     2024 WL 3236706 (N.D. Cal. June 28, 2024) .................................................9, 17, 19

14   *N.Y.C. Emps.' Ret. Sys. v. Jobs*,
       593 F.3d 1018 (9th Cir. 2010), *overruled on other grounds by Lacey v. Maricopa*
       *Cnty.*, 693 F.3d 896 (9th Cir. 2012) ....................................................................9, 20

15
16   *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
       730 F.3d 1111 (9th Cir. 2013)...................................................................................20

17   *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
18     759 F.3d 1051 (9th Cir. 2014)...................................................................................11

19   *Wasicek v. Sumo Logic, Inc.*,
       2024 WL 3708033 (N.D. Cal. Aug. 5, 2024)........................................9, 17, 18, 19

20   *Wochos v. Tesla, Inc.*,
       985 F.3d 1180 (9th Cir. 2021)........................................................8, 10, 11, 12

21
22   **STATUTES AND RULES**

23   8 *Del. C.* § 220 ..............................................................................................................7

24   Fed. R. Civ. P.
       8..............................................................................................................................19
       9(b) ..................................................................................................................*passim*
25     12(b)(6) ....................................................................................................................1

26   Private Securities Litigation Reform Act of 1995................................................*passim*

27
28

FENWICK & WEST LLP

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Page(s)

Securities Exchange Act of 1934
   15 U.S.C. § 14(a) ................................................................................................ *passim*
   15 U.S.C. § 20(a) ........................................................................................... 2, 8, 19
   15 U.S.C. § 78n(a) .................................................................................................. 8
   15 U.S.C. § 78t(a) .................................................................................................. 19
   15 U.S.C. § 78u-4(b)(2)(A) ...................................................................................... 9
   15 U.S.C. § 78u-5(c)(1)(A)(i) .................................................................................. 10

OTHER AUTHORITIES

17 C.F.R. § 240.14a-9(a) ............................................................................................ 8

FENWICK & WEST LLP

1

2

**<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

4

5

6

7

8

9

10

PLEASE TAKE NOTICE that on December 19, 2024 at 2:00 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Araceli Martínez-Olguín, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendants Andy MacMillan and UserTesting, Inc. ("UserTesting" or "the Company") (collectively "defendants") will and hereby move the Court for an order dismissing plaintiff's Second Amended Class Action Complaint ("Second Amended Complaint" or "SAC")[1] for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b), and the provisions of the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

11

12

13

14

15

This Motion is based on this Notice of Motion; Defendants' Memorandum of Points and Authorities; Request for Judicial Notice ("RJN") and Declaration of Felix Lee ("Lee Decl.") and exhibits attached thereto;[2] the Appendix filed in support of this Motion; the papers on file in this action; any reply which defendants may file in support of this Motion; and any evidence and argument presented to the Court.

16

**<u>STATEMENT OF ISSUES TO BE DECIDED</u>**

17

18

19

20

1.      Whether plaintiff's claims under Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") should be dismissed where plaintiff has failed to allege with particularity an actionable false or misleading statement, and facts giving rise to a strong inference of either fraud or negligence.

21

22

23

2.      Whether plaintiff's claims under Section 14(a) of the Exchange Act should be dismissed where statements challenged by plaintiff are forward-looking and therefore protected by the PSLRA's safe harbor.

24

25

3.      Whether plaintiff's claims under Section 14(a) of the Exchange Act should be dismissed for failure to plead loss causation.

26

27

28

---

[1] Unless otherwise indicated, citations to "¶" are to the paragraphs of the SAC.

[2] Citations to "Ex." are to the exhibits referenced in the Declaration of Felix Lee. Unless otherwise indicated, italicized quotations from the SAC or exhibits have emphasis added.

FENWICK & WEST LLP

4.    Whether plaintiff's claim under Section 20(a) of the Exchange Act should be dismissed for failure to allege a predicate violation.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In the face of a thorough opinion dismissing the plaintiff's Amended Complaint in its entirety, plaintiff filed a Second Amended Complaint that jettisons the bulk of her prior allegations regarding the alleged falsity of UserTesting's December 6, 2022 Definite Proxy Statement (the "Proxy"), but does not remotely plead sufficient facts to avoid dismissal of the two remaining purported misstatements. The undisputed narrative underlying this action remains unchanged—in the January 2023 acquisition of UserTesting by Thoma Bravo, shareholders received a massive 94% premium for their shares in a deal overwhelmingly approved by the Company's shareholders. Plaintiff is the lone shareholder advancing the inexplicable claim that the Company's shareholders were economically damaged by a transaction that instantly doubled their investment. Plaintiff originally premised her claim on the groundless theory that UserTesting provided two sets of misleading financial projections to the market in the Proxy, but the SAC has largely abandoned these allegations. Those that remain were already found to be defective in the Court's motion to dismiss order. The SAC does nothing to salvage those claims.

Most egregiously, plaintiff repleads an alleged misstatement regarding UserTesting's October 2022 revised financial projections that this Court held was forward-looking and accompanied by appropriate cautionary language, and therefore inactionable under the protections of the PSLRA safe harbor. In the face of this ruling, plaintiff attempts to argue again that this statement was not forward-looking, but the SAC's averments are nothing more than the same arguments using different turns of phrase that this Court already rejected. The same result is warranted here. And even if the safe harbor protections were ignored, this statement remains inactionable given plaintiff's inability to plead particularized facts showing falsity, and in particular that there was anything false or misleading about how the October financial projections were derived.

Similarly infirm are the SAC's allegations regarding the Q3FY22 financial results that

FENWICK & WEST LLP

motivated the revision to the Company's financial projections, *i.e.*, that revenue and calculated billings for the quarter came in lower than expected. The Court dismissed this alleged misstatement on grounds that plaintiff had failed to plead with requisite factual particularity the required mental state of negligence (and indeed, made no attempt to do so). The SAC does not cure this fatal defect. Under both the PSLRA and Rule 9(b) plaintiff must plead specific facts demonstrating defendant MacMillan's (and by extension, UserTesting's) state of mind, but the SAC does no such thing. Its allegations in this regard are premised ***entirely*** on Mr. MacMillian's position as CEO, and the SAC does not supply a single particularized fact (as opposed to unsupported assumptions) as to what Mr. MacMillan actually did or did not do to warrant a finding of negligence regarding the alleged misstatements at issue. Courts have repeatedly rejected such conclusory attempts to plead negligence in this fashion, and that governing authority likewise mandates dismissal of this claim.

Finally, these claims should also be dismissed on the independent ground that the SAC fails to plead loss causation. The fanciful allegation in the SAC that shareholders suffered economic damage from this enormously lucrative acquisition are entirely conclusory. Plaintiff does not provide a single well-pled fact to demonstrate, for instance, that the deal was "underpriced" or that the consideration shareholders received was unfair. This inability to plead such required specifics is not surprising, given the uncontested fact that ***both sets*** of UserTesting's financial projections—even the earlier set that did not take into account the Company's massive billings miss in Q3FY22—showed that the price shareholders received was not only fair, but more than fair. Courts routinely dismiss merger suits that attempt to plead loss causation in such cursory fashion, and as a consequence these claims should also be dismissed.

## II.    FACTUAL BACKGROUND

### A.    The Relevant Parties

UserTesting is a Delaware corporation founded in 2007 that provides video-based human insight to organizations to better understand their customer experiences. ¶ 22. Thoma Bravo is a prominent private equity firm. ¶ 1. On January 10, 2023, UserTesting's shareholders voted to approve Thoma Bravo's acquisition of UserTesting. ¶ 14. Andy MacMillan served as

FENWICK & WEST LLP

1  UserTesting's CEO and a member of the Company's board, and as of the filing of the SAC
2  continued on as CEO post-merger.  ¶ 23.

3      **B.**    **The January 12, 2023 Merger between UserTesting and Thoma Bravo**

4         **1.**    **After Going Public and Experiencing a Subsequent Sustained Decline**
5             **in its Stock Price, UserTesting Receives an Indication of Interest From**
           **Thoma Bravo**

6      UserTesting completed its initial public offering of common stock at a price of $14 on
7  November 17, 2021.  ¶ 31.  Throughout 2022, UserTesting's stock traded well below the initial
8  public offering price, with shares dipping to $3.31 per share in September 2022.  Proxy at 31.[3]

9      Against this backdrop of economic uncertainty, UserTesting received an indication of
10  interest from Thoma Bravo for a potential acquisition in July 2022.  ¶ 40.  In pursuing discussions
11  about a potential acquisition, the Company engaged Morgan Stanley as financial advisor.  ¶ 48.
12  The Company's Board formed a transaction committee ("Transaction Committee") composed of
13  three independent directors (none of whom have been named as a defendant in this action) to
14  oversee the process for a potential transaction.  *See* AC ¶ 54.

15      On September 6, 2022, the Transaction Committee met and reviewed with management
16  the Company's financial forecast for 2023 through 2025 (the "September Forecast").  Proxy at
17  32; Ex. 7.  On September 8, 2022, Thoma Bravo submitted a non-binding offer to acquire
18  UserTesting for $9.50 per share.  ¶ 52.  The Company's management negotiated for a higher
19  price, successfully resulting in a revised non-binding offer from Thoma Bravo of $10 per share
20  the following week.  ¶ 55.  Throughout September 2022, the Transaction Committee continued to
21  consider a potential transaction as Thoma Bravo proceeded with due diligence.  Proxy at 33-35.
22  At the same time, the Board also directed Morgan Stanley to explore acquisition discussions with
23  two other potential strategic partners, Party A and Party B.  *Id.* at 33.  Within weeks, Party A and
24  Party B declined to make a proposal to acquire the Company.  *Id.* at 34-35.

---

25  [3] As discussed in the RJN filed herewith, the Proxy and other documents referenced in the SAC
26  are judicially noticeable and may be considered on a motion to dismiss.  *See* 8/27/24 Order
Granting Motion to Dismiss, Dkt. No. 60 (the "Order") at 9-10 (granting defendants' request for
27  judicial notice); *see also Khoja v. Orexigen Therapeutics, Inc*, 899 F.3d 988, 1002 (9th Cir.
2018); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1059 (N.D.
28  Cal. 2012).

FENWICK & WEST LLP

FENWICK & WEST LLP

**2.      UserTesting Suffers a Massive Billings Shortfall in Q3FY2022,
Indicating a Significant Future Decline in Demand, Which Causes
Thoma Bravo to Revisit Its Offer**

On September 30, 2022, executives of the Company met with representatives from Thoma Bravo to discuss the Company's anticipated Q3 2022 financial results.  ¶ 56.  Though the Company's revenue results met its revenue guidance ($49.4 million versus ▆▆▆▆▆▆▆), its calculated billings (which is a key predictor of future results) significantly missed by an unprecedented margin.  Proxy at 35; Exs. 3-5.  Based on the September Forecast, UserTesting forecasted Q3 calculated billings to be $51M in Q3 but *fell nearly $5M short*, with Q3 actuals of only $46.4M, with a year-over-year growth rate *of just 6%*.  *Id*.  By contrast, in the Company's three prior quarters, it had reported year-over-year billings growth of 27%, 37% and 41%.  *Id*.

After reviewing the third quarter results, and "in particular, [UserTesting's] calculated billings for the quarter," Thoma Bravo withdrew their proposed offer price of $10.  Proxy at 35; *see also* ¶ 60.  The Company worked to update its projections to incorporate the actual Q3 results, revising the Company's long-term financial plan for the remainder of 2022 through 2026, with extrapolations prepared by Morgan Stanley for 2026 through 2036 (the "October Forecast," together with the September Forecast, the "Management Projections").  Proxy at 46.  The Management Projections would eventually be disclosed in the Proxy, with accompanying disclosures that they were "forward-looking information and are subject to many risks and uncertainties that could cause actual results to differ materially from the results forecasted."  *See, e.g.*, *id.* at 52 ("Management Projections reflect assumptions as to certain business decisions that are subject to change and cannot, therefore, be considered a guarantee of future operating results, and this information should not be relied on as such.").  The Proxy further warned that the Management Projections involved "known and unknown risks, uncertainties, and other factors that may cause actual results, performance or achievements to be materially different from any future results, performance or achievements, expressed or implied by the forward-looking statements."  *Id.* at 20.

FENWICK & WEST LLP

### 3. The Merger Closes, With Shareholders Receiving a Massive 94% Premium For Their Shares, and No Other Bidders Emerge

In the following weeks, Thoma Bravo proceeded with acquisition discussions at a substantially lower price than its prior offers, presenting price points ranging from $7 to $7.25. Proxy at 36-37. The Company was ultimately able to negotiate an offer price of $7.50, which represented an astonishing 112% premium over the market price on October 20, 2022 (the date the offer was made), and a 94% premium over the market price the day before the announcement of the merger. *Id.* at 37, 40. As set forth in banker documents excerpted and incorporated by reference into the SAC, the $7.50 offer would have been fair even if the original September Forecast—which did not take into account the precipitous decline in Q3FY2022 bookings—had been used to support the fairness analysis. *See* Ex. 8 at 16. On October 26, 2022, the Board unanimously decided to enter into a merger agreement with Thoma Bravo that included a 45-day "go-shop" period—an unusually seller friendly provision—during which the Company was permitted to solicit offers from other potential acquirors or partners. Proxy at 38-39. During the "go-shop" period, Morgan Stanley contacted 25 potential strategic partners and 19 financial sponsors to solicit interest and see if any would be willing to top Thoma Bravo's offer, but no such offers were made. *Id.* at 39.

### C. The Merger Is Consummated Following Robust Disclosures in the Proxy and Subsequent Supplemental Disclosures

UserTesting filed the Proxy on December 6, 2022 and filed a Supplemental Proxy with further disclosures on December 28, 2022. Among other things, the Proxy detailed the background of the merger and summarized the financial analyses performed by Morgan Stanley in rendering its fairness opinion. Proxy at 30-51. The Proxy also included extensive disclosures regarding the Company's financial forecasts, along with robust cautionary language throughout. *See, e.g.*, *id.* at 20-21, 52-53. The Proxy further provided a fulsome list of reasons why the Board recommended that UserTesting shareholders accept the offer from Thoma Bravo, and further delineated potential negative factors for shareholders to consider. *Id.* at 47-50.

### D.    The Litigation

In connection with the contemplated transaction with Thoma Bravo, UserTesting was reflexively named in five lawsuits and received nine demand letters around the time the Proxy was filed, each of which claimed that the Proxy omitted material information. Ex. 2 at 3-4. Such suits are a routine occurrence following a merger announcement. While they all lacked merit, to avoid the burden and expense of litigation, the Company issued supplemental disclosures (the "Supplemental Proxy") to moot such claims. *Id.* at 4. Those disclosures included further details on the background of the merger and Morgan Stanley's financial analyses, as well as a description of the merger litigation involving UserTesting. *Id.* at 4-7. The Supplemental Proxy also included meaningful cautionary language concerning any forward-looking statements made therein. *Id.* at 8. Following the filing of the Supplemental Proxy, all other plaintiffs agreed their claims were mooted by the supplemental disclosures, and plaintiff in this action remains the sole shareholder asserting claims in connection with the merger.

Plaintiff initially made a shareholder books and records inspection demand pursuant to 8 *Del. C.* § 220 raising allegations concerning the merger, and received documents in response to that demand. Lee Decl. ¶¶ 8-10. On March 21, 2023, plaintiff filed an initial Complaint, Dkt. No. 1, and subsequently filed her Amended Complaint ("AC") on August 11, 2023, naming UserTesting and Mr. MacMillan as well as two former UserTesting officers, but dropping six previously named director defendants, Dkt. No. 32.

#### 1.    The Court Dismisses the Amended Complaint

On August 27, 2024, the Court granted defendants' motion to dismiss, holding that all but one of the challenged statements were protected by the PSLRA Safe Harbor or were statements of opinion that were not subjectively or objectively false. Order at 11-19. As to the remaining statement regarding UserTesting's anticipated Q3 2022 results, the Court found that plaintiff sufficiently alleged falsity, but failed to allege the requisite state of mind. *Id.* at 19-21.

#### 2.    The Second Amended Complaint

Plaintiff filed the SAC on September 26, 2024. The SAC abandons the vast majority of

FENWICK & WEST LLP

previously challenged statements in the Proxy (and drops two defendants), and its allegations regarding the two purported misstatements that remain are essentially unchanged from the AC. The first alleged misstatement in the SAC mirrors plaintiff's allegations in the AC and adds no new substantive allegations. Plaintiff challenges the statement that UserTesting's anticipated Q3 2022 results "included revenue and calculated billings (total revenue plus the change in contract liabilities from the beginning to the end of the period...) that were lower than those anticipated by Wall Street analysts, Thoma Bravo and the September Financial Forecast" ("**Statement No. 1**"). Though the Court found that plaintiff sufficiently alleged falsity, the Court held that plaintiff failed to sufficiently allege the requisite state of mind of negligence. Order at 19-21. Plaintiff's SAC fares no better in that regard, presenting allegations that do not remotely plead particularized facts demonstrating the requisite state of mind for Mr. MacMillan (and by extension, the Company). ¶¶ 89-99. As before, plaintiff brings a control person claim against Mr. MacMillan under Section 20(a) based on the same underlying facts.

The second statement concerns the October Financial Forecast that the Court already ruled is protected by the PSLRA Safe Harbor. Specifically, the SAC assails the veracity of the statement that the October Forecast "reflected the potential impact of [User Testing's] financial results for the third quarter ended September 30, 2022 on future periods, and which reflected reduced levels of revenue, gross margin, EBITDA and ██████████████ as compared to the September Financial Forecast as a result of [User Testing's] revenue and billing results for the third quarter and estimates for the fourth quarter and trends in [User Testing's] end markets" ("**Statement No. 2**"). ¶ 6. As to Statement No. 2, the Court previously held that it was forward-looking given that it included "'assumptions' about future events on which [the] goal is based" and thus fell squarely within the protections of the safe harbor. Order at 12-13 (quoting *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021), and rejecting plaintiff's argument that aspects of the statement was "not forward-looking"). The SAC makes no attempt to plead additional particularized facts to alter the Court's conclusion.

FENWICK & WEST LLP

### III. PLAINTIFF'S CLAIMS ARE SUBJECT TO STRICT PLEADING REQUIREMENTS

Under Section 14(a), it is unlawful to solicit a shareholder vote with a proxy statement containing a material misrepresentation or omitting a material fact necessary to make the statements made not false or misleading. 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a). A well-pleaded claim under Section 14(a) requires plaintiff to allege "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *N.Y.C. Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). The PSLRA applies heightened pleading requirements for claims under Section 14(a), requiring a plaintiff to plead "(1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000).

The PSLRA also requires plaintiff to allege specific facts that give rise to a "strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). If a plaintiff alleges intentional falsity, she must plead each defendant's intent to defraud with particularity. *Desaigoudar*, 223 F.3d at 1023. But even when the negligence standard applies, the PSLRA requires the pleading of ***particularized facts*** showing negligence for each defendant. *Wasicek v. Sumo Logic, Inc.*, 2024 WL 3708033, at *7 (N.D. Cal. Aug. 5, 2024); *Mehedi v. View, Inc.*, 2024 WL 3236706, at *16 (N.D. Cal. June 28, 2024) ("*Mehedi II*"); *see also Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683 (9th Cir. 2005) (affirming dismissal of Section 14(a) claims where the complaint was "bereft of facts alleged which demonstrate the directors did not believe that the merger was in the 'best interests' at the time they made the recommendation, let alone a 'strong inference' of negligence").

Further, as previously recognized by the Court in its Order, where the complaint sounds in fraud, the heightened pleading requirements of Rule 9(b) also apply to a claim under Section 14(a). *See* Order at 10-11 ("Because Plaintiff asserts that UserTesting management knew that

FENWICK & WEST LLP

the financial projections in the October Forecast were false and were made to convince shareholders to accept the merger with Thoma Bravo, the claim 'sounds in fraud.'") (citing *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023)); *see also Desaigoudar*, 223 F.3d at 1022; *Kampe v. Volta Inc.*, 2024 WL 308262, at *36 (N.D. Cal. Jan. 26, 2024) ("Plaintiffs' nominal efforts to disclaim allegations of fraud in connection with their Section 14(a) and Section 20(a) claims . . . are unavailing given that the gravamen of the complaint is a uniform course of fraudulent conduct . . .") (citations omitted). Given that plaintiff continues to allege, to cite one example, that defendants "falsely or misleadingly indicated that UserTesting's Q3 2022 revenue results supported the reduced revenues reflected in the October Financial Forecast" (¶ 7) she must plead facts supporting such claims with particularity even in the context of Section 14. *Desaigoudar*, 223 F.3d at 1023.

## IV.    THE SAC FAILS TO CURE THE DEFICIENCIES IDENTIFIED BY THE COURT

### A.    Statement No. 2 Concerning the October Forecast Is Protected By the Safe Harbor

#### 1.    Statement No. 2 is Forward-Looking

Statement No. 2 is the same disclosure concerning the October Forecast that the Court previously ruled was forward-looking and therefore protected by the safe harbor. Order at 12. Specifically, the SAC alleges that it was false and misleading for the Proxy to state "that [the October Forecast] reflected the potential impact of our financial results for the third quarter ended September 30, 2022 on future periods, and which reflected reduced levels of revenue, gross margin, EBITDA and ██████████████ as compared to the September Financial Forecast as a result of our revenue and billing results for the third quarter[.]" ¶ 6. As this Court recognized, the PSLRA safe harbor precludes liability for forward-looking statements such as these when accompanied by meaningful cautionary language. Order at 11; 15 U.S.C. § 78u-5(c)(1)(A)(i); *see Wochos*, 985 F.3d at 1189-92.

The SAC makes an abortive attempt to alter the Court's conclusion by making the same argument using different words. Specifically, the SAC claims that:

> Plaintiff does not challenge any forward-looking aspect of the Second Proxy Misrepresentation. Rather, Plaintiff challenges the aspect of the statement that contains an express or implied concrete assertion concerning a specific current or past fact, i.e., that UserTesting's actual Q3 revenue results [a specific current or past fact] supported the reduced revenue numbers reflected in the October Financial Forecast.

*See* SAC at 3 n.2. The Court already considered, however, and rejected this exact attempt to recast Statement No. 2 as a non-forward-looking statement in its Order dismissing the AC. Order at 12 ("Plaintiff argues that the statement was not forward-looking because it can be proven true or false whether the October Forecast is based on third quarter revenue and billing or whether Defendants lowered the projections to facilitate the merger. Opp. at 24. Because the safe harbor protects the 'assumptions' about future events on which [the] goal is based . . . the Court finds that [Statement No. 2] is forward-looking.") (citing *Wochos*). Put another way, Statement No. 2 simply states that the October Forecast reflected reduced estimates for future periods compared to the September Forecast because its underlying assumptions had changed (*i.e.*, "as a result of our revenue and billing results for the third quarter and estimates for the fourth quarter and trends in our end markets that we observed subsequent to our preparation of the September 21 forecast"). Proxy at 38. Accordingly, Statement No. 2 concerns the October Forecast ***and its underlying assumptions***, both of which are forward-looking under governing law and thus protected by the safe harbor. Order at 12; *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014).[4]

### 2. Statement No. 2 Was Accompanied By Meaningful Cautionary Language

As this Court has already held, Statement No. 2 was accompanied by sufficient cautionary language and thus immunized by the safe harbor as a matter of law. Order at 15-17 (the language

---

[4] Plaintiff's argument that Statement No. 2 was "mathematically impossible, because the actual Q3 revenue results ($49.4 million) exceeded the anticipated Q3 revenue results" is both wrong and a non-sequitur. SAC at 3 n.2. It is wrong because Statement No. 2 actually stated that it was UserTesting's "revenue ***and billing results*** for the third quarter" that necessitated revisions to the Company's projections, and the SAC makes no attempt to explain why the October Projections were "mathematically impossible" once the Company's billing results were factored in. And the argument is a non-sequitur because plaintiff's disagreement with the accuracy and assumptions underlying the October Projections does not alter the fact that they are forward-looking and thus protected by the safe harbor.

FENWICK & WEST LLP

in the Proxy "is similar to language the Ninth Circuit has approved as meaningfully cautionary")

(citing *Intuitive Surgical*, 759 F.3d at 1059).  Specifically, the Proxy included a prominent section

with meaningful cautionary language concerning the forward-looking nature of the statements, and

the section of the Proxy titled "Management Projections" relating to Statement No. 2 regarding the

October Forecast (one of the Management Projections) contains additional cautionary language

warning of the forward-looking nature of the accompanying statements.  *See* Proxy at 20-21, 52-

53.  In holding that the cautionary language in the Proxy was sufficient, the Court specifically cited

to the following statements within the Proxy:

> Defendants stated that the "Management Projections constitute forward-looking
> information and are subject to many risks and uncertainties that could cause actual
> results to differ materially from the results forecasted . . . [.]"  Proxy at 52.  The
> Proxy lists these risks and uncertainties, including "industry performance, general
> business and economic conditions, customer requirements, [and] . . . adverse
> changes in applicable laws . . . [.]"  *Id.*  The Proxy also states that these projections
> will be affected by the company's "ability to achieve strategic goals, objectives and
> targets," and that the projections "reflect assumptions as to certain business
> decisions that are subject to change and cannot, therefore, be considered a guarantee
> of future operating results, and this information should not be relied on as such."  *Id.*
> The Proxy warns: "In light of the foregoing factors, and the uncertainties inherent in
> the Management Projections, our stockholders are cautioned not to place undue, if
> any, reliance on the Management Projections."  *Id.*

Order at 16.  Neither the Proxy's cautionary language nor Statement No. 2 have changed since the

Court previously held that the statement was covered by the safe harbor due to its forward-looking

nature and accompanying cautionary language.  The SAC pleads no facts to the contrary, and the

Court should reject any attempt by plaintiff to rehash her failed arguments.  Accordingly,

Statement No. 2 is protected by the PSLRA's safe harbor and is not actionable under Section

14(a).  *See Wochos*, 985 F.3d at 1190.

### 3.    Plaintiff Failed To Plead Particularized Facts Showing Defendants' Knowledge Of Falsity As to Statement No. 2

As before, because Statement No. 2 was accompanied by meaningful cautionary language,

the Court need not reach the question of whether plaintiff alleged particularized facts showing

defendants' knowledge of falsity.  *See* Order at 15-17.  Even were that not the case, any attempt by

plaintiff to skirt the safe harbor must fail given that the SAC pleads no particularized facts

FENWICK & WEST LLP

demonstrating defendants' "actual knowledge" of falsity as to Statement No. 2. *See In re Cutera Securities Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010) ("actual knowledge" and "cautionary language" safe harbor prongs are disjunctive.).

The SAC did not meaningfully change or supplement the allegations related to defendants' knowledge or belief in the falsity of the challenged statements. Plaintiff instead argues that Mr. MacMillan **should have known** that Statement No. 2 was false because he "was intimately involved in UserTesting's operations and the sale process, had deep personal knowledge of the Company's financial performance . . ." and "undoubtedly had personal knowledge of the facts concerning UserTesting's anticipated and actual revenue performance in Q3 2022." ¶¶ 96-97. Even accepting these allegations as true, they fail to demonstrate that Mr. MacMillan **actually believed**—let alone **knew**—that Statement No. 2 was false in describing bases for the October Forecast to cause shareholders to "misevaluate" the October Financial Forecast. *See* ¶ 88. Likewise, the SAC contains no facts suggesting that Mr. MacMillan knew the October Forecast was "falsely negative" or contained any "misleading characterization." *E.g.*, ¶ 73. These allegations are insufficient to show subjective falsity and, as previously recognized by this Court, plaintiff's conclusory allegations "fail[] to include factual allegations that the downward revision based on lower calculated billings numbers was unjustified." Order at 13 n.2.

In a particularly futile effort to bolster her claims, plaintiff resorts to Mr. MacMillan's statement that the Q3FY22 result was "strong" and included "record total revenue" to show that defendants knew that the October Forecast was misleading. ¶ 59. But, as the Court previously held, optimistic soundbites are insufficient to plead knowledge of falsity when, as here, they are entirely consistent with the downwardly revised October Forecast when given proper context. *See* Order at 19 ("[T]he fact that MacMillan made positive statements about the Company's future does not create an inference that relying on the October Forecast misrepresented the value of the Company."); *see also Golub v. Gigamon Inc.*, 847 F. App'x 368, 372 (9th Cir. 2021) ("The positive figures listed in these press statements are not inconsistent with the Board's professed determination in the proxy statement that Gigamon remained on a growth trajectory . . . .").

In other words, there was nothing about the Company's Q3 2022 results that remotely

FENWICK & WEST LLP

suggests Mr. MacMillan's actual knowledge of falsity of Statement No. 2. Plaintiff does little more than assert her bare opinion that the October Forecast was not reasonable and contained misrepresentations, and the SAC does nothing to demonstrate that Mr. MacMillan believed the reasons provided in the challenged statement were not true and accurate in describing the October Forecast. Order at 19 ("Ultimately, while Plaintiff disagrees that the calculated billings decrease supported revising the financial projections, she has not provided factual allegations that the statements were objectively false or that Defendants subjectively did not believe them to be true."); *see also Golub v. Gigamon, Inc.*, 372 F. Supp. 3d 1033, 1051-52 (N.D. Cal. 2019). Because the SAC fails to plead any particularized facts showing actual knowledge of falsity as to Statement No. 2—a forward-looking statement—that statement is protected under the second prong of the safe harbor.

## V.    PLAINTIFF FAILS TO PLEAD A FALSE OR MISLEADING STATEMENT

### A.    The Challenged Statement No. 1 Regarding UserTesting's Q3 Results Is Not Actionable

The SAC also fails to adequately allege that Statement No. 1 concerning UserTesting's Q3 results was false. Plaintiff cannot deny that the primary stated reason for the revised October forecast was the significant projected billings miss in Q3 2022. Instead, the SAC conspicuously conceals the billings miss entirely, deleting from the SAC her prior acknowledgment of the Q3 billings miss that was plead in the AC. *Compare* Dkt. No. 32, ¶ 65 *with* SAC. But plaintiff's evasive pleading is no substitute for the concrete, particularized facts required to state a claim as to Statement No. 1.

Statement No. 1 states that UserTesting's anticipated Q3 2022 results "included revenue and calculated billings [total revenue plus the change in contract liabilities from the beginning to the end of the period] . . . that were lower than those anticipated by Wall Street analysts, Thoma Bravo and the September Financial Forecast." While defendants acknowledge that the Court's Order ruled that Statement No. 1 was misleading because "the anticipated results 'included revenue *and* calculated billings . . . that were lower than those anticipated'" (Order at 20, emphasis in original), the language highlighted by the Court can be grammatically construed in

FENWICK & WEST LLP

three possible ways: (1) that calculated billings **alone** were lower than anticipated (which plaintiff

admits), with "that were lower than those anticipated" modifying only "calculated billings (2) that

calculated billings and revenue **combined** were lower than anticipated (which is demonstrably

true)[5], or, as plaintiff asserts, (3) that revenue and calculated billings were **both** lower than

anticipated. Under the first two readings, the statement is uncontrovertibly true, and only under

the third reading would the statement be arguably incorrect. But plaintiff pleads no particularized

facts to support the third reading of the statement when the first two ways of reading the

statement are more reasonable given the fact that UserTesting's lower billings results was

highlighted throughout the Proxy.

Indeed, in alleging that Statement No. 1 is false, plaintiff's reading ignores the context and

"total mix" of information available at the time the proxy was filed. *See In re Tesla, Inc.

Securities Litig.*, 2023 WL 4032010, at *8 (N.D. Cal. June 14, 2023) (statement by CEO was not

materially misleading in light of other contemporaneous statements); *Bodri v. GoPro, Inc.*, 252 F.

Supp. 3d 912, 924 (N.D. Cal. 2017) (statements about "the 'momentum' of [the company's] 'core

business' cannot reasonably be described as false or misleading" in light of company's other

statements clarifying the meaning). When Statement No. 1 was made, UserTesting's financial

results for the previous quarter had been publicly disclosed and demonstrated the Company

missed its calculated billings marks by an unprecedented amount. "[A] reasonable investor,

reading the statement fairly and in context" would not have understood the statement to convey

that both revenue and calculated billings fell short of projections. *Bodri*, 252 F. Supp. 3d at

924. Plaintiff cannot "omit[] the context in which the statements were made," as that context

makes clear that the calculated billings miss was the reason for the revised projections. *Id.* In

short, the Company's actual financial results were publicly available to shareholders and thus the

"total mix" of information demonstrated that the calculated billings result alone (or in the

aggregate with revenue results) caused the Company to revise its projections. Plaintiff does not

point to any allegations in the AC to establish that Statement No. 1 was objectively and

Fᴇɴᴡɪᴄᴋ & Wᴇsᴛ LLP

---

[5] For Q3 2022, projected revenue in the September Forecast was $49.3M, and projected billings was $51.3M, for a total of $100.6M (Ex. 7 at 13), while the actuals were $49.4M in revenue, and billings were $46.4M, for a total of $95.8M. Proxy at 51.

subjectively false.  At best, the SAC alleges only that Statement No. 1 was ambiguous, which—when read in context of the "total mix" of information available at the time of the proxy—is not enough to demonstrate falsity.  *See In re Tesla*, 2023 WL 4032010, at *8.

### B.    The SAC Pleads No Particularized Facts Demonstrating That Statement No. 2 Is False and Misleading

As noted above, Statement No. 2 is forward looking and protected by the safe harbor, and is therefore inactionable.  *See* Section IV.A, *supra*.  Even if the safe harbor protections were ignored, however, the SAC fails to plead any particularized facts demonstrating Statement No. 2 was false.  Plaintiff claims Statement No. 2 was misleading because it supposedly falsely "indicated that UserTesting's Q3 2022 revenue results supported the reduced revenues reflected in the October Financial Forecast."  ¶ 7.  This is a wholesale mischaracterization – Statement No. 2 expressly stated that the October Forecast was based on "our revenue and billing results for the third quarter and estimates for the fourth quarter and trends in our end markets that we observed subsequent to our preparation of the September 21 forecast."  ¶ 6.  Plaintiff openly disregards the bulk of what Statement No. 2 stated were the reasons for the revised October Forecast and in so doing fails to plead particularized facts demonstrating falsity.  The failure to address billings is especially egregious, given that Q3FY22 billings only grew by 6% in Q3—after growing 27%, 37% and 41% in the prior three quarters—a growth rate so sluggish and damaging to plaintiff's theory of the case that the SAC deleted any acknowledgement of it. *Compare* Dkt. No. 32, ¶ 65 *with* SAC.  Plaintiff does not dispute the accuracy of that 6% calculated billings growth rate, nor does she contest that calculated billings were a key predictor of the Company's future growth.  Thus, plaintiff bears the burden of stating particularized facts which show the October Forecast was false in light of these unfavorable results—mere expressions of skepticism or disagreements with management's business judgments do not suffice under governing pleading standards.  *In re Sequenom, Inc. Stockholder Litig.*, 2023 WL 4833465, at *8 (S.D. Cal. July 27, 2023) (rejecting merger proxy allegations based on purportedly misleading projections on grounds that "[b]esides simply disagreeing with the Board's position, Plaintiffs have not pled facts showing [the projections were] objectively false").  The SAC fails to meet this burden, as previously noted by

FENWICK & WEST LLP

this Court, and therefore Statement No. 2 must be dismissed for failure to plead falsity. Order at 19 ("Ultimately, while Plaintiff disagrees that the calculated billings decrease supported revising the financial projections, she has not provided factual allegations that the statements were objectively false[.]").

## VI. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE THAT EITHER DEFENDANT ACTED WITH THE REQUIRED NEGLIGENT STATE OF MIND

### A. Plaintiff Must Plead Her Section 14 Claim with Particularized Facts Demonstrating Negligence

The required state of mind for a Section 14(a) claim is negligence. *In re McKesson HBOC, Inc. Securities Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000). Under this standard, a plaintiff must "make individualized allegations of negligence," meaning that, "[f]or each Defendant, Plaintiff must allege the duty that they owed to the Plaintiff and how that duty was breached." *Mehedi v. View, Inc.*, 2023 WL 3592098, at *14 (N.D. Cal. May 22, 2023) ("*Mehedi I*"). Thus, plaintiff must allege facts showing that the sole individual defendant, Mr. MacMillan, acted negligently by breaching a duty owed to shareholders.[6] And moreover, because the SAC sounds in fraud, the heightened pleading standard of Rule 9(b) also applies. *See* Order at 10-11; *Mehedi II*, 2024 WL 3236706, at *14. Thus, for multiple independent reasons plaintiff bears the burden of pleading particularized facts that demonstrate Mr. MacMillan's negligence. *Desaigoudar*, 223 F.3d at 1023 (plaintiff must plead facts supporting claims of fraud or mistake with particularity even in the context of Section 14).

Courts routinely reject "conclusory averments" of negligence or a duty to correct misstatements as a basis for pleading negligent conduct in the absence of further allegations providing details regarding how the defendant's conduct fell below the reasonably prudent standard of care, such as "alleging Defendants failed to review certain materials, or were neglecting their responsibilities, or designed and oversaw a flawed review process." *In re Ocera Therapeutics, Inc. Securities Litig.*, 2018 WL 7019481, at *10 (N.D. Cal. Oct. 16, 2018), *aff'd*, 806 F. App'x 603 (9th Cir. 2020) ("Indeed, as already discussed, the timeline acknowledged in

---

[6] Notably, plaintiff makes no attempt to argue negligence on the part of UserTesting as an entity other than through the imputation of such state of mind from Mr. MacMillan. *See* ¶¶ 99, 116.

FENWICK & WEST LLP

the Complaint reflects the Merger resulted from an extensive and thorough review process that

was not rushed, biased, or conflicted.").

### B. Plaintiff Fails to Plead the Required Facts Showing Negligence, and Conclusory Allegations Regarding Mr. MacMillian's Position as CEO Do Not Suffice as a Matter of Law

Here, critically, plaintiff fails to include any particularized facts that might suggest Mr.

MacMillan was aware of any misrepresentation or false characterization in the challenged

statements, or that Mr. MacMillan should have done something more than he did. *See Wasicek*,

2024 WL 3708033, at *19 ("Plaintiffs make no allegations as to what would have been

reasonably prudent under the circumstances and what Sayar and Grierson did or failed to do that

fell short of reasonable prudence."). In lieu of any specific facts that might demonstrate that Mr.

MacMillan was careless or negligent in negotiating the merger or preparing the Proxy, SAC relies

instead on conclusory assertions that Mr. MacMillan's "position as the Company's President,

CEO, and chair of the Company, and participation in, and/or awareness of the Company's

financial performance, prospects, and operations" and his "access to copies of the Proxy and other

statements" means that he must have been negligent in failing to identify and correct the alleged

misstatements. *E.g.*, ¶¶ 121-22; *see also* ¶¶ 96-97.

Consequently, plaintiff's state of mind allegations are entirely limited to generic

averments regarding Mr. MacMillan's role at the Company, with no particularized facts showing

any specific acts of negligence with regard to the challenged statements. As the court in *Wasicek*

recently explained, plaintiff must do more than state that the Mr. MacMillan *should* have known a

statement in the proxy was false by virtue of his job title, including allegations concerning the

"general duties inherent to the positions of CEO and CFO" or his "direct and supervisory

involvement in the negotiation of the Merger and the preparation of the Projections." *E.g.*,

*Wasicek*, 2024 WL 3708033, at *19 (plaintiff failed to plead negligence, specifically stating that

"missing is any allegation that Defendants were *aware of the alleged omissions*, or that the

omissions were *so obvious that they must have been aware of them*") (emphasis added). "It

cannot simply follow from a job description of their positions that [defendants] are expected to

know that an omission is materially false or misleading." *Id.* ("To allow such conclusory

FENWICK & WEST LLP

allegations to survive the pleadings stage would be to do away with the Section 14(a) negligence standard entirely."); *see also Butala v. Owlet, Inc.*, 2024 WL 3648141, at *8 (C.D. Cal. Aug. 5, 2024) ("[I]t is insufficient to allege merely that the [defendants] should have known through due diligence alone that the challenged statements were false, and that the [defendants] acted negligently in signing a statement containing false information.").

Put another way, any contrary finding would effectively and improperly apply a strict **liability standard** to these Section 14 claims, by concluding that the presence of any alleged misstatement in a proxy is sufficient by itself to demonstrate negligence on the part of the company's executives—which is effectively the theory that plaintiff pleads here and which has been repeatedly rejected by courts. *Wasicek*, 2024 WL 3708033, at *18.

In the recent *Mehedi II* decision addressing certain defendants, the court rejected allegations strikingly similar to those contained in the SAC. There the court held that general allegations that a defendant signed a proxy, alone or in combination with other general allegations pertaining to a defendant's job role, "does not plausibly suggest that any of the [defendants] were negligent." *Mehedi II*, 2024 WL 3236706, at *16. However, as to the CEO defendant, the *Mehedi II* court held that plaintiffs sufficiently alleged negligence by putting forth specific facts establishing that the CEO was previously the subject of an audit committee investigation finding that he had acted negligently in connection with the alleged misstatements at issue. *Id.* at *17. In contrast, the general allegations set forth in the SAC contain no specific allegations as to Mr. MacMillan's conduct, and instead assert general allegations concerning Mr. MacMillan's title and role without more. As multiple courts have recently demonstrated, these allegations of mere access and involvement with a transaction, without specific additional facts demonstrating a failure of reasonable care, are insufficient to establish negligence under Section 14(a). *See id.* at *15 (allegations that certain defendants "had access to and reviewed" information insufficient to plead negligence under Section 14(a)); *see also Wasicek*, 2024 WL 3708033, at *18-19.

The SAC's conclusory allegations regarding Mr. MacMillan's supposed knowledge and role at the Company fails to satisfy the heightened pleading standard under Rule 9(b), or even the minimal notice pleading standard under Rule 8. These general assertions are insufficient to

FENWICK & WEST LLP

1   satisfy the negligence requirement under Section 14(a) and therefore the fails to state a claim as to

2   Mr. MacMillan's state of mind.[7]

3   **VII.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION**

4           Plaintiff's claim fails for the independent reason that she has failed to plead loss causation.

5   *See Jobs*, 593 F.3d at 1023 (dismissing Section 14(a) claim for failing to plead loss causation).

6   "In well-pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual

7   economic harm." *Id.*; *see Krieger v. Atheros Commc'ns, Inc.*, 2012 WL 1933559, at *7 (N.D.

8   Cal. May 29, 2012) (dismissing Section 14(a) claim challenging merger proxy for lack of loss

9   causation); *Bailey v. Zendesk, Inc.*, 2024 WL 1807943, at *6 (N.D. Cal. Apr. 24, 2024) (same).

10  Put another way, "[a]dequately pleading loss causation requires particularized allegations that

11  'the very facts about which the defendant [allegedly] lied' caused injuries." *Zendesk*, 2024 WL

12  1807943, at *6 (quoting *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730

13  F.3d 1111, 1120 (9th Cir. 2013)); *see Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)

14  (requiring plaintiff plead both economic loss and proximate causation).  "The existence of a

15  material misstatement or omission cannot by itself establish loss causation"; instead, plaintiff

16  "must tie the misleading proxy statements directly to the economic harm suffered by [the

17  plaintiff]." *Karp v. First Conn. Bancorp, Inc.*, 535 F. Supp. 3d 458, 471 (D. Md. 2021), *aff'd*, 69

18  F.4th 223 (4th Cir. 2023).

19          Plaintiff makes no meaningful effort to tether the two alleged misstatements to any

20  ***economic loss*** whatsoever.  That is hardly surprising, given that the Company's stockholders

21  received a whopping 94% premium for their shares in the arms-length negotiated merger and,

22  despite a thorough process, no other bidders emerged (much less any willing and able to pay

23  more).  Proxy at 37, 40.  Rather than pleading specifically how the two alleged misstatements

---

[7] To state a claim under Section 20(a) for control person liability, plaintiff must allege facts sufficient to demonstrate "a primary violation under the Exchange Act" and that a defendant "exercised actual power or control over the primary violator." *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1061 (N.D. Cal. 2013); 15 U.S.C. § 78t(a).  Because plaintiff's Section 14(a) claim fails, her Section 20(a) claim likewise fails.[8]  As noted above, even under the September Forecast on which Statement No. 2 relies, the transaction would have been deemed fair under virtually every fairness metric even if they had not been superseded by the October Forecast.  Hence, under the case law and common sense, no "loss" could conceivably flow from that alleged misstatement.

FENWICK & WEST LLP

caused an economic loss, the SAC pleads generalities that have been repeatedly rejected as a matter of law.  For example, courts have rejected loss allegations, heavily relied upon here, that the merger was "underpriced"—despite the extraordinary premium, or the lack of any other bidder willing to pay a higher price—or were less than the "fair value" of Company shares, as both inadequate and speculative.  ¶¶ 101, 103; *see, e.g.*, *Zendesk*, 2024 WL 1807943, at *6 (rejecting claim that downward projections caused economic loss) (citing *In re Ocera Therapeutics*, 806 F. App'x at 605 (charactering such allegations regarding earlier, higher projections as "speculative in the extreme"); *Krieger*, 2012 WL 1933559, at *7 (rejecting allegations as conclusory and speculative).[8]

Plaintiff's other allegations are equally unavailing.  The allegation that the Company would have had greater value as a "standalone entity" but was sold "during a time of price weakness in the stock market" (¶ 104) is not only speculative and conclusory, but suggests that any supposed loss was caused by timing and market conditions, not the two alleged misstatements.  Then district court Judge Koh held precisely that in *Krieger*.  2012 WL 1933559, at *7; *see also Gray v. Wesco Aircraft Holdings, Inc.*, 847 F. App'x 35, 38 (2d Cir. 2021) (rejecting proxy claim based on the alleged difference between the merger consideration and the intrinsic value of shares, and that "management had a stand-alone plan for growth", for lack of loss causation).

Plaintiff's only other supporting allegation is that the merger price was lower than publicly disclosed price targets of various analysts.  ¶ 105.  But those estimates were no secret, and an analyst's price target is hardly a proper basis for suggesting that either of the alleged misstatements here caused some kind of economic loss.  Not surprisingly, the Ninth Circuit has rejected that precise theory.  *In re Ocera Therapeutics*, 806 F. App'x at 605 ("The suggestion that the analysts' opinions of what the shares might be worth were different from what was actually received, let alone that they represented the shares' true value, is too speculative to plead with

---

[8] As noted above, even under the September Forecast on which Statement No. 2 relies, the transaction would have been deemed fair under virtually every fairness metric even if they had not been superseded by the October Forecast.  Hence, under the case law and common sense, no "loss" could conceivably flow from that alleged misstatement.

FENWICK & WEST LLP

particularity that shareholders experienced losses—or to plead with particularity that the required causal relationship existed between [the company's] purported misrepresentations or omissions and those losses"). Moreover, as the SAC itself discloses, each of the alleged price targets plaintiff cites came from analyst reports that ***pre-dated*** the October 27, 2022 disclosure of UserTesting's Q3FY22 results, and thus were based on stale financial information that cannot conceivably serve as the basis for any claim that shareholders were damaged by an unfair sale price. ¶ 105. This failure to properly plead loss causation provides independent grounds on which this motion to dismiss should be granted.

## VIII.    CONCLUSION

Defendants respectfully request that the Court dismiss plaintiff's SAC with prejudice for failure to state any claim again defendants.

Dated:    November 7, 2024                    FENWICK & WEST LLP


                                              By: *Felix S. Lee*
                                                   Felix S. Lee

                                              Attorneys for Defendants Andy MacMillan and
                                              UserTesting, Inc.

FENWICK & WEST LLP